[Cite as *In re M.H.*, 2012-Ohio-5216.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: M.H. and A.H.                    :

                                        :       C.A. CASE NO.      25084

                                        :       T.C. NO.    JC 2008-7130
                                                            JC 2008-7132

                                        :
                                                (Civil appeal from Common
                                        :       Pleas Court, Juvenile Division)

                                        :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___9th___ day of ___November___, 2012.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BRYAN K. PENICK, Atty. Reg. No. 0071489, 1800 Lyons Road, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

JULIUS CARTER, Atty. Reg. No. 0084170, 130 W. Second Street, Suite 1622, Dayton, Ohio 45402
        Attorney for Minor Children

· · · · · · · · · ·

DONOVAN, J.

{¶ 1} Appellant-petitioner Mother appeals a decision of the Montgomery County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's decision wherein the parental rights of Mother were terminated, and permanent custody of M.H. and A.H. (hereinafter "the children") was awarded to Montgomery County Children's Services (hereinafter "MCCS"). The trial court adopted the magistrate's decision in a judgment entry filed on February 15, 2012. Mother filed a timely notice of appeal with this Court on March 7, 2012.

{¶ 2} On August 1, 2008, Dayton Police responded to Mother's residence on a report that young children had been left alone. Upon their arrival, the police discovered M.H. and A.H. alone at Mother's residence which was found to be "extremely dirty with piles of trash and dirty clothes throughout." Neither of the children were able to tell the police officers where Mother was. Both children were observed to be dirty and wearing soiled diapers. Mother arrived approximately twenty minutes later and explained that she had been at the grocery store. Based on the appearance of the children and the residence in general, the police officers contacted MCCS and arranged to immediately have the children placed into emergency custody. Shortly thereafter, a caseworker from MCCS arrived, removed the children from Mother's custody, and placed them into a non-adoptive foster home.

{¶ 3} On August 4, 2008, MCCS filed a Neglect and Dependency Complaint regarding the children. The children were adjudicated neglected and dependent on September 29, 2008. In a decision issued on March 5, 2009, the trial court granted temporary custody of the children to MCCS. Thereafter, the trial court granted the MCCS a first extension of temporary custody of the children on July 25, 2009.

{¶ 4} After the children had been removed from her care, Mother met with a caseworker from MCCSB in order to develop a case plan aimed at reunification. Specifically, the case plan required Mother to obtain a psychological and parenting assessment, as well as complete a drug and alcohol assessment, and follow through with any recommendations made regarding those assessments. Mother was ordered to enroll in education courses or obtain employment and provide verification. Further, Mother was required to obtain and maintain stable housing. Lastly, the case plan required her to complete parenting education classes and follow all recommendations upon completion. Mother was ordered to complete her case plan on October 8, 2008.

{¶ 5} After determining that reunification was not possible within a reasonable amount of time, MCCS filed a motion for permanent custody of the children on December 2, 2009. A trial was held before the magistrate on April 30, 2010, in order to determine if MCCS should be granted full custody of the children. In decisions issued on July 30, 2010, and August 3, 2010, the magistrate granted permanent custody of the children to MCCS upon a finding that Mother had failed to complete the objectives as provided in her case plan.

{¶ 6} Mother filed objections to the magistrate's decision on August 12, 2010. On June 1, 2011, Mother filed supplemental objections to the magistrate's decision. Subsequently on February 15, 2012, the trial court overruled Mother's objections and adopted the decision of the magistrate in a decision issued, thus affirming the award of permanent custody to MCCS

{¶ 7} It is from this decision that Mother now appeals.

{¶ 8} Because they are interrelated, Mother's first and second assignments of error

will be discussed as follows:

{¶ 9}   "THE TRIAL COURT ERRED IN FINDING THE GRANT OF PERMANENT CUSTODY OF A.H. AND M.H. TO MCCS TO BE IN THE BEST INTEREST OF THE CHILDREN."

{¶ 10}   "THE TRIAL COURT GRANTING PERMANENT CUSTODY TO MCCS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 11}   In her first assignment, Mother contends that the trial court erred when it found that granting permanent custody to MCCS was in the best interests of the children. Mother argues in her second assignment that granting permanent custody of the children to MCCS was against the manifest weight of the evidence.

{¶ 12}   A parent has a fundamental right to care for and have custody of his or her child. *In re Schaeffer Children*, 85 Ohio App.3d 683, 689, 621 N.E.2d 426 (3d Dist. 1993). Therefore, a court should only terminate a parent's rights as an alternative of last resort. *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (3d Dist.1994).   A trial court may terminate a parent's right to his or her child and grant permanent custody to a government agency if it determines by clear and convincing evidence that the grant of permanent custody is in the best interests of the child and finds that one of the factors listed in R.C. 2151.414(B)(1) applies. R.C. 2151.414(B)(1).   An appellate court gives great deference to a trial court's determination in custody matters. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).   Therefore, a trial court's decision awarding permanent custody will be affirmed if it is supported by evidence sufficient to meet the clear and convincing standard of proof. *In re Dylan C*., 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist.1997).

{¶ 13} Mother argues that the juvenile court's award of permanent custody of the children to MCCS was against the manifest weight of the evidence. A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle*, 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), at syllabus.

{¶ 14} R.C. 2151.414(B)(1) provides that the court may grant the motion of an agency seeking permanent custody of a child if it finds, by clear and convincing evidence, that it is in the best interest of the child to award permanent custody of the child to the agency, and the court makes one of the four alternative findings set out in R.C. 2151.414(B)(1). One of those alternative findings is that the child "has been in the temporary custody of one or more public children's services agencies for twelve or more months out of a consecutive twenty-two month period." R.C. 2151.414(B)(1)(d). It is undisputed that at the time of the permanent custody hearing before the magistrate that the children had been in the custody of MCCS for over twelve months of a consecutive twenty-two month period. Accordingly, because R.C. 2151.414(B)(1)(d) is satisfied, the only issue before the trial court was whether it was in the best interests of the children to grant permanent custody to MCCS.

{¶ 15} In determining the best interests of a child, the court must consider all of the relevant factors including:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month period . . .;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. R.C. 2151.414(D)(1).

{¶ 16} As stated previously, Mother's case plan required her to obtain a psychological and parenting assessment, as well as complete a drug and alcohol assessment, and follow through with any recommendations made regarding those assessments. Mother was ordered to enroll in education courses or obtain employment and provide verification. Further, Mother was required to obtain and maintain stable housing. Lastly, the case plan

required her to complete parenting education classes and follow all recommendations regarding her performance in those classes.

{¶ 17}  Upon review, we conclude that the trial court did not err when it found that it was in the best interests of the children to be placed in the permanent custody of the MCCS.  While we note that the record establishes that Mother completed the parenting classes that she was ordered to attend, and she did, in fact, secure and maintain stable and appropriate housing, a significant portion of her case plan had not been completed.

{¶ 18}  Specifically, testimony adduced at the permanent custody hearing established that Mother never had stable and verifiable income.  In July of 2009, Mother claimed to have been employed at a Wendy's Restaurant and a business called Graphics, both located at the Greene, a mall in Beavercreek, Ohio.  Mother, however, failed to provide any pay stubs to the MCCS to prove that she had actually been employed at either business before she quit working ostensibly to attend school at Sinclair Community College.  Mother enrolled at Sinclair in March of 2009 but failed to complete the first semester because she participated in residential drug treatment at CADAS.  The record establishes that Mother never re-enrolled at Sinclair.  Mother told her caseworker that she planned on taking some classes at Southwestern Community College, but no evidence was adduced that she ever did.  Moreover, Mother had no employment after January 2010, nor did she re-enroll in school.  Thus, the record establishes that Mother failed to complete the case plan objective requiring her to enroll in and stay in school, or, in the alternative, maintain verifiable employment.

{¶ 19}  While attending inpatient drug treatment at CADAS, Mother was diagnosed with "cannabis dependency."  Mother initially attended inpatient treatment from May 17,

2009, to June 19, 2009, but did not complete the program. MCCS informed Mother in August of 2009 that she needed to call her drug counselor and complete the program, but the record establishes that she did not do so immediately. In January of 2010, Mother arranged a new intake appointment with CADAS. Jennifer Johnson, Mother's drug counselor, informed her that in order to do so, Mother was required to attend an orientation session at CADAS before she could become involved in the group therapy again. The record establishes that Mother failed to attend the scheduled orientation session.

{¶ 20} Mother finally attended another orientation session and thereafter attended five group sessions between January and March of 2010. The record establishes, however, that Mother missed nine group session meetings during that time period, as well. The last CADAS group session Mother attended was on March 15, 2010. Johnson testified that Mother was required to attend three group sessions a week for six weeks in a row; then attend one group session a week for ten weeks in a row; and then meet with recovery groups regarding her past drug use. On March 11, 2010, Mother was scheduled to have an individual session with Johnson, but arrived forty-five minutes late for the appointment, and "nothing was accomplished" at the session per Johnson's testimony. Another individual session was scheduled for March 22, 2010, but Mother failed to show up for appointment. In light of Mother's failure to comply with the appointment schedule, Johnson testified that Mother did not successfully complete the CADAS program. Accordingly, Mother failed to complete the portion of her case plan requiring substance abuse treatment.

{¶ 21} The record establishes that Mother also never attended her parenting and psychological assessment. MCCS referred Mother to Dr. Cordell for the assessment, but

she missed two appointments in October and November of 2008. In order to schedule a third appointment, Mother was informed that she would have to pay a fee of $55.00 because of the previously missed appointments. Mother did not pay the fee, and the third appointment was never scheduled. Additionally, the record establishes that Mother did not attempt to obtain the parenting and psychological assessment elsewhere. Thus, that portion of her case plan was never completed.

{¶ 22} We further note that Mother's visitation with the children has been inconsistent, at best. While she had only a few missed visits from August of 2008 to March of 2009, the record establishes that Mother did not visit the children at all from June 26, 2009, until January 15, 2010. Mother had scheduled a visit on January 8, 2010, but she canceled.

{¶ 23} After resuming visits on January 15, 2010, she missed the scheduled visit on January 22, 2010. Mother did attend the next two visits on January 29 and February 5, 2010. Mother, however, missed the next three scheduled visits on February 12, 2010, February 19, 2010, and February 26, 2010. Mother did not visit the children at all in March of 2010. On April 16, 2010, Mother attended a visit with the children, but she missed the next visit scheduled for April 23, 2010, just a week before the permanent custody hearing. The last time Mother visited with the children was briefly on the morning of the permanent custody hearing on April 30, 2010.

{¶ 24} The record establishes that the children are adoptable, and there are no other suitable relatives with which the children can be placed. Neither father of the children has any type of relationship with the children. One of the fathers, C.D., filled in the paperwork

for paternity testing prior to the custody hearing, but it was not processed in a timely fashion. C.D. also came to the permanent custody hearing, but he left before it was over and did not return. At the hearing, a representative for the children's Guardian ad Litem (GAL) testified that he believed it was in the children's best interests to be placed in the permanent custody of MCCS.

{¶ 25} In light of the foregoing, we find that the trial court did not err when it found that it was in the children's best interests to be placed in the permanent custody of MCCS. Additionally, the trial court's decision in that regard was clearly not against the manifest weight of the evidence.

{¶ 26} Mother's first and second assignments of error are overruled.

{¶ 27} Mother's third and final assignment of error is as follows:

{¶ 28} "THE TRIAL COURT ERRED IN DENYING APPELLANT A MOTION TO CONTINUE THE PERMANENT CUSTODY HEARING."

{¶ 29} In her final assignment, Mother argues that the trial court violated her parental rights and her right to due process when it denied her motion to continue the permanent custody hearing. Specifically, Mother asserts that because she made "significant" progress on her case plan objectives, the trial court should have allowed her a continuance in order to complete the remainder of the objectives.

{¶ 30} Juv. R. 23 states that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." The terms of the rule further the State's policy that juvenile court cases are to be heard and determined as expeditiously as possible. *In re Dryer*, 2d Dist. Montgomery No. 18040, 2000 WL 331770 (March 31, 2000). Specifically, [i]n

evaluating a motion for a continuance, a court should note: 1) the length of the delay requested; 2) whether other continuances have been requested and received; 3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; 4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; 5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and 6) other relevant factors, depending on the unique facts of each case. *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981).

{¶ 31}  An appellate court will not reverse a trial court's decision denying a motion for continuance unless the trial court abuses its discretion. *Id*. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable.  *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985).  It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 32}  At the time of the permanent custody hearing on April 20, 2010, Mother had not completed the bulk of her case plan objectives, despite the case plan being ordered on October 8, 2008.  While Mother obtained suitable housing and completed the parenting education classes, the trial court found her progress regarding the remaining objectives to be insufficient.  Mother failed to maintain verifiable employment and did not complete her schooling objectives.  Mother failed to complete the CADAS program.  Additionally, Mother addressed neither the psychological nor the parenting assessment objectives of her case plan by failing to attend her scheduled appointments with Dr. Cordell.  Finally, Mother's visitation with the children has been sporadic and inconsistent.  The record

establishes that she has clearly missed more scheduled visits than she has attended. Significantly, Mother did not visit the children at all from June 26, 2009, until January 15, 2010. We also note that the motion for a continuance was made by Mother's counsel on the day of the permanent custody hearing and denied.

{¶ 33}   In our view, Mother had ample time to complete her case objectives before the permanent custody hearing. Mother's lack of progress with respect to the bulk of her case plan objectives and her inconsistent pattern of visitation demonstrate an unwillingness or inability to accomplish her case plan objectives for reunification with her children. Accordingly, we find that the trial court did not abuse its discretion when it denied Mother's motion for continuance of the permanent custody hearing.

{¶ 34}   Mother's third and final assignment of error is overruled.

{¶ 35}   All of Mother's assignments having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Michele D. Phipps
Bryan K. Penick
Julius Carter
Hon. Nick Kuntz