[Cite as *In re R.L.*, 2012-Ohio-6049.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

IN THE MATTER OF: :

    R.L., A.L. and A.L. : C.A. CASE NOS. 2012CA32

                            2012CA33

                  :

                          T.C. NOS. N43082

                  :                     S43380

                  :         (Civil appeal from Common
                          Pleas Court, Juvenile Division)

                  :

                  :

                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    21st    day of    December   , 2012.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0084071, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. No. 0074317, 46 E. Franklin Street, Centerville, Ohio 45459
      Attorney for Defendants-Appellants

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Appellants R.L. (Father) and J.L. (Mother) appeal from the juvenile court's judgment granting permanent custody of their three children to Greene County Children's Services ("GCCS").   For the reasons set forth below, we reverse the judgment.

{¶ 2}    The parties had two children, R.L. (D.O.B. March 2, 2000), A.L.1 (D.O.B. November 20, 2007).   The record reflects that R.L and A.L.1 were adjudicated as abused, neglected and dependent on July 11, 2011.   That same month, Mother and Father were both convicted of Illegal Manufacture of Drugs, Illegal Assembly or Possession of Chemicals for Manufacture of Drugs with regard to a Methamphetamine lab in their family residence. Mother was also convicted of Aggravated Possession of Drugs.   She was sentenced to a four-year prison term and Father was sentenced to a five-year prison term.   While incarcerated, Mother gave birth to the parties' third child, A.L.2 (D.O.B. September 10, 2011).   A.L.2 was adjudicated dependent on January 12, 2012.

{¶ 3}    That same month, GCCS filed a motion for permanent custody.   The Guardian Ad Litem ("G.A.L.") filed a report recommending that the motion for permanent custody be granted.   On February 14, 2012, Father filed a motion to convey him from the Chillicothe Correctional Institution and to permit him to attend the permanent custody hearing.   The juvenile court denied the motion.   On March 22, 2012 - six days prior to the scheduled hearing - Father filed a motion, *pro se*, for a continuance to permit more time for the investigation of possible relative placements for the children.   Specifically, his motion stated that GCCS should contact five different individuals in order to obtain contact information regarding his cousins living in Tennessee and his "biological aunts & uncles that live outside of this country in Germany."

{¶ 4}     The hearing was held on March 28, 2012.   Prior to presenting any evidence, the attorneys representing Father, Mother and the children argued in favor of Father's requested continuance and requested a continuance of sixty days.   However, the attorney for GCCS argued that the agency had "performed an extensive search for relatives, and was unable to find anybody willing or able to take care of the children."   He also noted that the agency had performed home studies with regard to two different non-relative placements. The G.A.L. stated that she had spoken to friends and relatives and found no one willing to take all three children.   The juvenile court denied the motion for continuance.

{¶ 5}     Following the hearing, the juvenile court granted the motion for permanent custody upon a finding that the children cannot be placed with either parent within a reasonable period of time due to their incarceration.   The court further stated that "as provided under Ohio R.C. Section 2151.414(E)(12), both parents were incarcerated at the time of the filing of the agency's motion and the dispositional hearing, and will not be available to care for the children for at least eighteen months after the filing of the motion and the day of the dispositional hearing."   The court also found that "the agency conducted a diligent search to locate a suitable relative placement."   The parties have filed a timely appeal in which they raise five Assignments of Error.

{¶ 6}     The first assignment of error is as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH [MOTHER OR FATHER] WITHIN A REASONABLE PERIOD OF TIME.

{¶ 7}     The parents acknowledge that, at the time of the permanent custody hearing,

they were both incarcerated on charges of manufacturing methamphetamine. They also acknowledge that Father was sentenced to a prison term of five years while Mother was sentenced to a prison term of four years. However, they contend that no evidence was presented to "indicate that the sentences were mandatory or that judicial or early release was not a possibility." Further, they contend that Mother "is likely a candidate for judicial release given her lack of a felony record." Thus, they argue that the evidence does not support a finding that the parents would be unavailable to care for the children for at least eighteen months after the filing of the motion for permanent custody.

{¶ 8} Of relevance to this case, section 2151.414(B)(1)(a) of the Revised Code provides that a trial court may grant permanent custody of a child to a movant if the court determines at a hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that " * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶ 9} With regard to making a finding that the child cannot be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1)(a), R.C. 2151.414(E) states:

> In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall

enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

\* \* \*

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

**{¶ 10}** A review of the record demonstrates that the agency offered the testimony of Benjamin Roman who is a City of Fairborn Detective currently assigned to the Greene County ACE Drug Task Force. Detective Roman testified that he was involved in the investigation of Mother and Father regarding the production of methamphetamine in their home. The Detective testified that Father was convicted and sentenced to a term of five years while mother was convicted and sentenced to a term of four years. The Detective also testified regarding certified copies of the judgment entries from the criminal cases. Those documents were admitted without objection.

**{¶ 11}** A review of the documents clearly indicates that four years of Mother's sentence is mandatory pursuant to R.C. 2929.13(F) and that five years of Father's sentence is likewise mandatory. Thus, any argument that either party might obtain an earlier judicial release is without merit.[1]

**{¶ 12}** We next turn to Father's claim that an appeal was pending in his criminal

---

[1] We note that there is no evidence in this record that either parent had a pending motion for judicial release at the time of the custody hearing.

case at the time of the permanent custody hearing. Apparently he contends that the possibility of prevailing on appeal could result in his ability to reunite with the children prior to eighteen months after the hearing.

{¶ 13} We cannot say that the juvenile court abused its discretion by failing to give the possibility of an appellate victory weight when determining whether the children could be reunited with Father within a reasonable time. Simply put, the court did not err by failing to consider something that was merely speculative.

{¶ 14} We conclude that the juvenile court did not err or abuse its discretion with regard to its finding that the children could not be reunited with the parents within a reasonable time. Therefore the first assignment of error is overruled.

{¶ 15} The second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY TO GREENE COUNTY CHILDREN SERVICES WAS IN THE BEST INTEREST OF THE CHILDREN AS SAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Father and Mother contend that the trial court's determination that a grant of permanent custody of the children to GCCS is in the best interest of the children is not supported by the evidence. Specifically, they argue that the juvenile court failed to make any detailed findings regarding the statutory factors to be used in determining best interest.

{¶ 17} A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence "if the record contains

competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established." *In re A.U.,* 2d Dist. Montgomery No. 22287, 2008–Ohio–187, at ¶ 9. R.C. 2151.414(D)(1) lists relevant factors that courts must consider in determining the best interest of a child. These factors include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 18}** Not every statutory condition must be met before a determination regarding best interest may be made. See *In re K.H.,* 2d Dist. Clark No.2009–CA–80,

2010–Ohio–1609, at ¶ 57; *In re A.M.L.B.,* 9th Dist. Wayne No. 08CA0028, 2008–Ohio–4944, at ¶ 8 (holding that "[t]he trial court did not err by failing to discuss an irrelevant best interest factor"). And no one statutory factor is more important than any other. See *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, at ¶ 56.

{¶ 19}   In this case, the juvenile court's judgment regarding the best interest of the children merely states that "it is in the children's best interest to be in the permanent custody of the agency."   None of the factors is discussed.   A review of the hearing transcript reveals that no one provided any testimony regarding the best interest of the children except to say that the children were doing well in their foster care placements.   Instead, the testimony was directed mainly at the agency's attempts to locate potential relative placements.

{¶ 20}   The only substantive evidence regarding the best interest of the children is in the report filed by the G.A.L. who opined that awarding custody of the children to the agency was in their best interest.   However, the court's final decision makes no reference to that report.

{¶ 21}   We do note that there is evidence that, unless placed with a relative, the children would be separated for adoption. Given that R.L. and A.L.1 had been living together with the parents for the four plus years that A.L.1 has been alive, it is not unreasonable to assume that the boys are bonded with each other and that separating them is not in their best interest.   Further, there is evidence that R.L. expressed the desire to be reunited with his parents and that A.L.1 expressed the wish to go with R.L.   The juvenile court was obviously aware of this discrepancy because, in a February 17, 2012 judgment, it noted the conflict and appointed a separate attorney to represent the children at the hearing.

{¶ 22} The children had not been in the custody of the agency for a full year at the time the hearing was held. Further, as noted in the third and fourth assignments of error, while the juvenile court did not have any testimony from the parents regarding the best interest of the children, the court was well aware that the parents wanted the agency to search for a suitable relative placement so that the children could remain together, and that the parents had named additional individuals to contact in this regard.

{¶ 23} Given the lack of evidence regarding the best interest determination as well as the lack of a discussion of the statutory factors by the juvenile court, coupled with the stated wishes of the older children and the fact that adoption would result in their separation from one another, we conclude that the court abused its discretion in determining that awarding permanent custody of the children to the agency is in their best interest. Therefore, the second assignment of error is sustained.

{¶ 24} The Third assignment of error raised by the parents is:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING [THE PARENTS] THE RIGHT TO ATTEND AND PARTICIPATE IN THE PERMANENT CUSTODY HEARING AND BY DENYING THE REQUEST FOR CONTINUANCE OF THE PERMANENT CUSTODY HEARING.

{¶ 25} The parents contend that the juvenile court erred by failing to sustain their motions to convey them from prison to the ajudicatory hearing. They further contend that the trial court abused its discretion by failing to grant the requested continuance of the permanent custody hearing.

**{¶ 26}** We begin with the failure to convey, and note that contrary to the parents assertion that they both filed motions to convey from prison to the hearing, the record shows that only Father filed such a motion.

**{¶ 27}** This court has held that a juvenile court has discretion to decide whether to hold a permanent custody hearing without having an incarcerated parent conveyed to the hearing. *In re R.D.*, 2d Dist. Clark No. 08-CA-26, 2009-Ohio-1287.

**{¶ 28}** In overruling the motion, the trial court relied upon the following three-pronged balancing test, set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether an incarcerated parent should be present at a custody termination proceeding: 1) the private interest affected; 2) the risk of erroneous deprivation and the probable value of additional safeguards; and 3) the governmental burden of additional procedural requirements. In addressing these three factors, the juvenile court stated as follows:

> "The termination of parental rights is a significant private interest. The Court finds, however, that there is a low risk of erroneous deprivation, based upon the length of [Father's] incarceration, the fact that he has legal representation, the record of the proceedings will be available for review, and there are other means for [Father] to state his position to the Court. The Court will permit [Father] to express his wishes regarding the care and custody of the children in an affidavit. The court also finds that the burden of additional procedural safeguards by having [Father] present is significant. These latter two factors outweigh the private interest affected.

{¶ 29} The record establishes that both parents were represented by separate counsel. Additionally, a complete record was made of the hearing. The court was aware of the fact that the parents favored placement with a relative as the best option for the children. Neither Father nor Mother made a request to conduct a deposition as permitted by Juv.R. 25(B), and neither filed an affidavit as the court's order allowed. The parties do not identify any additional testimony that they would have provided that would have materially affected the outcome of the hearing on permanent custody. Therefore we cannot conclude that the juvenile court abused its discretion by denying Father's request to be conveyed from prison to the hearing.

{¶ 30} We next turn to the claim that the court abused its discretion by denying the motion to continue the hearing. This argument is based upon the claim that the requested continuance, filed by Father six days prior to the hearing, was necessary in order to permit the agency time in which to investigate more individuals with regard to possible relative placements.

{¶ 31} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge ." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.* The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} As stated in the fifth assignment of error, set forth below, we conclude that the juvenile court did not abuse its discretion in determining that the agency had made

reasonable efforts to locate relatives for placement. Based upon this, we conclude that the court, thus, did not abuse its discretion by denying the motion to continue which was filed six days before the scheduled hearing date, especially since the agency did try to contact the newly identified individuals listed in the motion.

**{¶ 33}** The third assignment of error is overruled.

**{¶ 34}** The fourth assignment of error states:

THE [PARENTS] WERE DENIED EFFECTIVE ASSISTANCE OF COUNSEL BEFORE AND DURING THE PERMANENT CUSTODY HEARING.

**{¶ 35}** The parents contend that they were denied the effective assistance of trial counsel. Specifically, they argue that counsel was deficient for failing to 1) meet in person with their clients; 2) present evidence; 3) conduct an examination regarding the G.A.L.'s report which indicated that Mother had an approved private placement for A.L.2; 4) conduct an examination regarding the progress by both parents on their respective caseplans; and 5) personally attempt to contact relatives for possible placement.

**{¶ 36}** The right to counsel in termination proceedings includes the right to effective assistance of such counsel. *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist. 1998). In order to obtain a reversal of a judgment based upon a claim of ineffective assistance of trial counsel, a movant must establish both that his trial counsel's conduct did not fall within the range of reasonable professional assistance, and that there is a reasonable probability that the outcome of the proceedings would have been different had counsel's performance not been deficient. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984).

{¶ 37}  We turn first to the contention that counsel did not present any evidence in the form of an affidavit, deposition or any other means available, that counsel failed to meet with the parents and that counsel failed to attempt to contact any relatives regarding possible placement.  There is nothing in the record to support the claim that counsel failed to meet with the parents or failed to contact relatives.  Further, nothing in the record indicates that counsel's decision regarding the presentation of evidence was the result of any deficiency.  The parents do not set forth what type of evidence they would have presented.  The only possible deficiency we can glean from the record is the lack of evidence regarding the best interest of the children.  However, as we have reversed this matter with regard to the best interest standard, any deficiency in counsel's conduct has been rendered moot.

{¶ 38}  We next turn to the claim that counsel failed to ask about a private placement mentioned in the report of the G.A.L., The G.A.L. noted that Mother had wanted to place the youngest child with a family in Holmes County via a program offered through the prison system.  However, upon investigation, it was determined that the family was not properly licensed to receive foster children and the child was subsequently fostered with the brother and sister-in-law of Father's cousin.  We cannot discern any prejudice stemming from the failure to ask questions regarding the Holmes County placement when there was no possibility, due to a lack of licensing, of placing the child there.

{¶ 39}  Finally, the parents complain that counsel failed to cross-examine the agency caseworkers regarding their progress on their caseplans.  There was evidence presented that both parents would need to find "safe and stable" housing upon their release from prison and

that both needed to complete alcohol and drug assessments. There was also evidence that they had not been able to complete any of these requirements as of the date of the hearing. We are not sure what, if any, effect cross-examination on this subject would have produced given the length of the subject prison terms. Nor can we say that the failure to cross-examine on this subject constituted anything other than trial strategy.

{¶ 40} We cannot find, on this record, that counsel's performance was deficient or that any deficiency resulted in prejudice to the parents. Therefore, the fourth assignment of error is overruled.

{¶ 41} The fifth assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT GREENE COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO INVESTIGATE AND/OR LOCATE ALTERNATIVE RELATIVE OR NON-RELATIVE PLACEMENTS FOR THE CHILDREN.

{¶ 42} Mother and Father contend that because the agency failed to investigate alternative placements for the children, the trial court erred by awarding it permanent custody. In support they argue that despite giving the agency telephone numbers for relatives and friends, the agency merely sent out letters without contacting people by telephone. They also claim that the agency failed to attempt to contact the individuals listed in Father's motion for continuance filed one week prior to the hearing. Finally, they contend that the agency erred in relying on the aid of K.M. in searching for relatives as K.M. had a conflict of interest regarding the placement of the children.

{¶ 43} A review of the record demonstrates that the agency caseworkers made many attempts to find an alternate placement for the children. The agency sent letters regarding the matter to six individuals and couples for whom they did not have a telephone numbers. The letters not only asked whether the addressees were interested in taking the children, but also inquired as to whether they knew of anyone else willing to do so. Of those six, none of the letters were returned and only one person contacted the agency. That person stated they she and her husband were afraid to get involved. She would not leave her contact information and never had any more contact with the agency.

{¶ 44} The agency also was supplied telephone numbers for another six individuals and/or couples. Five of those did not want to take the children. One person was left a voice message, but never contacted the agency. The agency also did home studies on two separate family friends whose names were supplied by Mother and Father. However, those persons were not able to pass the home studies. There is also evidence that the agency caseworkers attempted to locate possible relatives using computer and file searches. Regardless of whether K.M. had any conflict of interest in this matter, it is clear from the record that the agency did not rely upon her in its efforts to find alternate placements.

{¶ 45} As noted above, Father filed a motion for continuance a week prior to the hearing. In the motion he named several individuals whom he claimed the agency needed to contact in order to obtain contact information regarding relatives in Tennessee and Germany. One caseworker testified that the day before the hearing she went to the addresses provided and attempted to contact these individuals. She testified that it appeared that people were home but would not answer her knock on their doors. She testified that

she left her business card in the doors, but no one contacted her. There was also testimony that when the caseworker took the children to visit Father while incarcerated he did not offer her any of the names contained in the subsequent motion.

{¶ 46} This court has held that the consideration of whether a child can be placed with a relative is not a statutory requirement. *In re F.C.,* 2d Dist. Montgomery No. 23803, 2010–Ohio–3113, ¶ 24. "That possibility is a matter that ought to be considered in connection with the child's interaction and relationship with the child's parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child." *Id.*

{¶ 47} As noted in our disposition of the second Assignment of Error, we cannot determine whether the court considered this issue as a best interest matter with regard to the children's interaction and relationship with relatives. In any event, there is nothing in the record to indicate that the children had any interaction with any of the relatives investigated.

{¶ 48} The juvenile court concluded that the agency had made reasonable efforts to find alternate placements. We agree. The mere fact that the agency was not able to contact the people contained in the motion is not enough, by itself, to negate this conclusion. Therefore, the fifth assignment of error is overruled.

{¶ 49} The second assignment of error being sustained, the judgment of the juvenile court awarding permanent custody of the children to GCCS is reversed and this matter is remanded for further proceedings.

. . . . . . . . . .

GRADY, P.J., concurs.

FROELICH, J., concurring:

{¶ 50}     I write separately only to express concern, related to future cases, with the denial of a motion to transport an incarcerated parent to a hearing on permanent custody when a timely and appropriate request is made.

{¶ 51}     Appellate courts consistently give deference to a trial court's determination on questions of fact, because "[t]he knowledge a trial court gains through observing the witnesses and the parties * * * cannot be conveyed to a reviewing court by a printed record." *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 20 (involving a custody dispute); *see, e.g., Mayer v. Medancic*, 124 Ohio St.3d 101, 2009-Ohio-6190, 919 N.E.2d 721, ¶ 19 (discussing the rate and manner of calculating post-judgment interest owed on a promissory note); *Sigmon v. Southwest Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, ¶ 19 (affirming imposition of sanctions against an attorney for frivolous conduct in filing a claim); *Judd v. Meszaroz*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶ 18 (involving a property dispute and a related motion for sanctions against the attorneys).

{¶ 52}     A trial court's determination as to the best interest of a child is a factual determination that warrants such deference, so long as the trial court's conclusion is supported by some competent, credible evidence going to all the essential elements of the case. *See, e.g., In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994); *In re M.H.*, 2d Dist. Montgomery No. 25084, 2012-Ohio-5216, ¶ 12; *In re A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 21-22.

{¶ 53}     As stated in the majority opinion, this court has held that a juvenile court

has discretion to decide whether to bring an incarcerated parent to a permanent custody hearing. *In re R.D.*, 2d Dist. Clark No. 08-CA-26, 2009-Ohio-1287. In these limited circumstances, we permit the court to weigh the parent's evidence by means of an affidavit (as the trial court suggested in this case) or a deposition (Juv.R. 25); we then review the decision under an abuse of discretion standard. *Id*. at ¶ 12.

{¶ 54} The juvenile court utilized a balancing test set forth by the U.S. Supreme Court in *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. *Eldridge* held that an evidentiary hearing was not required prior to the termination of Social Security disability payments. The court distinguished this situation from *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which required a hearing before termination of welfare benefits. The *Eldridge* court held:

> "[D]ue process is flexible and calls for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 [1972]. Resolution of the issue here involving the constitutional sufficiency of administrative procedures prior to the initial termination of benefits and pending review, requires consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

**{¶ 55}** Applying these factors to Father's situation: (1) the private interest in parenting one's children exceeds those of termination of either Social Security or welfare benefits; (2) the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards is unknown on this record; and (3) the government's interest, including the fiscal and administrative burdens that the additional substitute procedures [e.g., the transportation, security, and cost] would entail are also unknown from this record (although the court did make findings on these factors).

**{¶ 56}** It seems incongruous that in cases involving other civil matters, such as a driveway repair, an auto collision, or the administration of medical care, as well as in criminal matters, we place great emphasis, in assessing witness credibility, on the trial court's advantage in judging the accuracy, candor, and believability of witnesses and the weight to be given their testimony due to the fact that, in the trial court, the finder of fact sees the witnesses, hears the inflection of their voices, and observes their appearance, conduct, demeanor, and accompanying gestures. Yet, in cases involving the permanent termination of parental rights, which the supreme court has called "the family law equivalent of the death penalty in a criminal case," *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), citing *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991), if one of the parents is incarcerated, we permit the trial court to reach its decision about the best interest of the children without utilizing any of these in-person tests to weigh the evidence. This distinction is troubling. It permits a trial court to make the decision to terminate parental rights without hearing and seeing the people who – except for the children – have the greatest stake in the outcome.

**{¶ 57}** The parents in this case admitted to criminal offenses involving a very dangerous drug and manufacturing process. No doubt certain offenses and the facts of the crimes may weigh heavily in a court's decision as to the best interests of the children. Nonetheless, loss of custody is not an automatic sanction for any criminal offense.

**{¶ 58}** Father did not avail himself of other means to inform the court of his views, although it is clear that he favored placement with a relative, so that the children could stay together and/or that he could regain a place in their lives when he was released from prison. The court seems to have been well-aware of Father's viewpoint on this issue, which was relevant to the best interest of the children.

**{¶ 59}** We did not cite *Eldridge* in *In re R.D.*, 2d Dist. Clark No. 08-CA-26, 2009-Ohio-1287, but rather noted that "Appellant has not identified what testimony [he] would have offered had the juvenile court allowed [him] to attend the permanent custody hearing and [/or] continued the hearing until [he] was released from prison." *Id.* at ¶ 26. The same is true here. On this record, I agree with the majority that the trial court did not abuse its discretion in denying the motion of Father to be transported to the hearing and in awarding permanent custody to GCCS.

. . . . . . . . . .

Copies mailed to:

Nathaniel R. Luken
Jennifer S. Getty
Hon. Robert W. Hutcheson