[Cite as *In re R.L.*, 2014-Ohio-3955.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | C.A. CASE NOS. 2013-CA-46 |
| R.L., A.L. and A.L. | : | and 2013-CA-50 |
| | : | T.C. NOS. N43082 and S43380 |
| | : | (Juvenile appeal from<br>Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . .

## **O P I N I O N**

Rendered on the _____12th_____ day of _____September_____,
2014.

. . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. No. 0009172, by BRITTANY M. HENSLEY, Atty.
Reg. No. 0086269, Greene County Prosecuting Attorney's Office, 61 Greene Street, Xenia,
Ohio 45385
        Attorney for Appellee, Greene County Children Services

JAMES S. ARMSTRONG, Atty. Reg. #0020638, 131 North Ludlow Street, Suite 386,
Talbott Tower, Dayton, Ohio 45402
        Attorney for Appellant, Father

JAY ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Appellant, Mother

FROELICH, P.J.

{¶ 1}   Father and Mother appeal from judgments of the Greene County Court of Common Pleas, Juvenile Division, which granted permanent custody of their children, R.L., A.L.1, and A.L.2, to Greene County Children Services ("GCCS").   For the following reasons, the judgments of the trial court will be affirmed.

{¶ 2}    In May 2011, GCCS filed a complaint alleging that Mother and Father's two sons, R.L. (born March 2, 2000) and A.L.1 (born November 20, 2007), were neglected and dependent children; they were placed in the temporary custody of GCCS.   The complaint alleged that the children exhibited poor hygiene, that their medical ailments went untreated, and that R.L.'s attendance at school was poor.   In July 2011, R.L. and A.L.1 were adjudicated abused, neglected, and dependent.   That same month, Mother and Father were each convicted of Illegal Manufacture of Drugs and Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, related to the operation of a methamphetamine lab in their family residence.   Mother was also convicted of Possession of Controlled Substances.   Mother was sentenced to a four-year prison term, and Father was sentenced to a five-year prison term.   While incarcerated, Mother gave birth to the parties' third child, a daughter, A.L.2 (born September 10, 2011).   A.L.2 was immediately placed in the temporary custody of GCCS and was adjudicated dependent on January 12, 2012.

{¶ 3}    In January 2012, GCCS filed a motion for permanent custody of the children, which was granted.   Mother and Father appealed.   Noting that the trial court's  judgment did not discuss any of the statutory factors related to the children's best interest and that the two older children were bonded and would be separated for adoption, which those children

did not want, we concluded that the trial court had abused its discretion in determining that awarding permanent custody to GCCS was in their best interest. *In re R.L., A.L., and A.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 23. We reversed and remanded for further proceedings. *Id.* at ¶ 49.

{¶ 4} In January 2013, GCCS filed another motion for permanent custody of the children. The parents remained incarcerated at that time and had sought placement of the children with friends or relatives. The court conducted an in-camera interview with R.L. in April 2013 and a hearing on GCCS's motion in July 2013.

{¶ 5} In its August 1, 2013 judgment entry, the trial court concluded that granting permanent custody was in the children's best interest, that they had been in the temporary custody of GCCS for 12 or more months of the previous 22-month period, and that the children could not be placed with their parents within a reasonable period of time. The trial court also found that GCCS had investigated more than 15 possible placements recommended by the parents, but that none was appropriate and/or the individuals involved either were uninterested in becoming involved or had been unresponsive to GCCS's contacts. The court noted that the foster family with which R.L. and A.L.1 lived was willing to keep them indefinitely, which would satisfy the boys' desire to stay together, but the family was not interested in adoption. A.L.2, who had never lived with or closely bonded with her brothers, had been placed in a different foster home, and that foster family was interested in adopting her. The children did not meet the requirements for a planned permanent living arrangement, and temporary custody could not be extended. The guardian ad litem recommended that permanent custody be granted to GCCS so that the children could remain

with their foster families.    The trial court granted permanent custody of the three children to GCCS.

{¶ 6}    Father and Mother appeal from the trial court's August 2013 judgments, which granted permanent custody of the three children to GCCS.   The parents have filed separate briefs.   Father raises four assignments of error.   He argues that the trial court abused its discretion in concluding that the best interest of the children was served by an award of permanent custody; he asserts that temporary custody should have been extended. He also contends that R.L.'s attorney was improperly excluded from the court's in camera interview with the child and that he (Father) was denied due process.   (Case No. 2013 CA 46.)   Mother raises two assignments of error, in which she contends that the trial court failed to properly weigh the best interest factors set forth in R.C. 2151.414(E) and that its decision was against the manifest weight of the evidence.   (Case No. 2013 CA 50.)   Due to the similarity of these arguments, we will address them together.

{¶ 7}    R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) is present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. R.C.

2151.414(B)(1); *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14, citing *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 8.

{¶ 8} In this case, there is no dispute that the children had been in the custody of GCCS for 12 or more months of a consecutive 22-month period when GCCS's second motion for permanent custody was filed. R.L. and A.L.1 had been in GCCS's custody for 27 months at the time of the court's judgment, and A.L.2 had been in its custody for 23 months. Father's brief points out that, by virtue of the trial court's original order granting permanent custody to GCCS, and our subsequent reversal of that order on appeal, the children arguably spent part of the time included in the trial court's calculations in GCCS's *permanent* custody, rather than its temporary custody. Under the facts of this case, however, we find this distinction to be of little, if any, significance. Whether in GCCS's temporary or permanent custody, the children were indisputably in the type of legal limbo contemplated by R.C. 2151.414(B)(1) for twelve or more months of a consecutive 22-month period preceding the trial court's judgment. The children remained with their foster families, rather than with their parents, during the parents' previous appeal.

{¶ 9} Mother argues in her brief that the court failed to adequately consider the potential of her early release from prison, possibly as early as August 2014, and that it therefore erred in concluding that the children could not be placed with her within a reasonable period of time.

{¶ 10} Pursuant to R.C. 2051.414(B)(1), the trial court was required to determine whether a grant of permanent custody was in the best interest of the children and *one* of the other listed conditions; having found that the children had been in the temporary custody of

GCCS for 12 or more months of a consecutive 22-month period, the court was not required also to consider whether the children could be placed with either parent within a reasonable period of time (although the court did so in this case). The court's finding that the children had been in the temporary custody of GCSS for the requisite time, coupled with its finding that the grant of permanent custody was in the children's best interest, as discussed below, was a sufficient basis for its grant of permanent custody.

{¶ 11} Moreover, we addressed Mother's argument about the likelihood of reunification within a reasonable time in the previous appeal, noting that certified copies of the judgment entries of conviction from the parents' criminal cases had been offered into evidence. We stated: "A review of the documents clearly indicates that four years of Mother's sentence is mandatory pursuant to R.C. 2929.13(F) and that five years of Father's sentence is likewise mandatory. Thus, any argument that either party might obtain an earlier judicial release is without merit." *In re R.L., A.L., and A.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 11.

{¶ 12} With respect to the best interest of a child, R.C. 2151.414(D) directs the trial court to consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent

custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. R.C. 2151.414(D); *In re S.J.* at ¶ 15. The factors set forth in R.C. 2151.414(E)(7) through (11) include the parents' convictions of specific crimes, the parents' repeated withholding of food or medical treatment without justification, placing the child at risk of harm two or more times due to drug or alcohol abuse and rejecting treatment under a case plan, and abandoning the child.

{¶ 13} With respect to these factors, the trial court found that all three children were bonded with their foster families and that they had "not retained a significant or positive relationship with their parents due to the parents' incarceration." The record indicated that, although the foster parents of R.L. and A.L.1 were not interested in adoption, they were very open to a long-term or indefinite placement; A.L.2's foster family was interested in adopting her. The court observed that the children had been "in a state of flux without a permanent solution for more than two (2) years" and that they had no interaction with extended family members. R.L. and A.L.1 had also had minimal interaction and had little bond with A.L.2, with whom they had never lived. It was very important to R.L. and A.L.1 that they stay together, and their foster care arrangement provided this option. The trial court found that, if the children were placed for adoption separately, R.L. was old enough to refuse to consent,[1] which the court found "could easily" happen if A.L.1 were not included. More than fifteen potential placements recommended by the parents were investigated by GCCS, but none was appropriate and/or willing to take the children; some of these recommendations involved

---

[1] Pursuant to R.C. 3107.06(E), a minor over the age of twelve must consent to his or her adoption, unless the court, finding that it is in the best interest of the minor, determines that the minor's consent is not required.

relatives living in other countries who had never met the children.

{¶ 14} The guardian ad litem's report indicated that both parents have extensive criminal histories beyond the offenses for which they were imprisoned at the time of the hearing, and R.L. had been abandoned at birth and lived in foster care for the first year of his life. Mother and Father operated a methamphetamine lab in their home, where the children "lived amongst this illegal activity and were exposed to an extremely hazardous environment." The guardian ad litem described a complete lack of parental supervision and care, constant exposure to strangers in their home, and a lack of structure and boundaries. The guardian ad litem also expressed her belief that the "seeds of ethnic, racial, and law enforcement prejudices were deliberately and proudly sown" by Father into R.L. and A.L.1. Based on the guardian ad litem's report and recommendation, the court concluded that the children were "in desperate need emotionally for a permanent and secure placement."

{¶ 15} This conclusion gained further support from the testimony of GCCS caseworkers at the hearing. These witnesses testified that R.L. and A.L.1 had made great progress in their social, emotional, and intellectual development since being placed in their foster home. R.L. was doing well in school, and numerous disruptive behaviors that had been present in the early months of his placement with the foster family had significantly diminished or disappeared. During this time, the boys had also developed close relationships with their foster parents and foster siblings. The boys, particularly R.L., came to appreciate the structure and values provided in the foster home, as compared with his parents' home. A.L.2 was on track developmentally and well-adjusted to her foster home.

{¶ 16} During an in camera interview with the judge, R.L. indicated his view that he

and his siblings were paying for his parents' mistakes, that he was glad his parents were getting help in prison, and that he wanted to stay with his foster family (and with A.L.1) if he could not have his parents back. The guardian ad litem stated in her report that A.L.1 "just wants to be wherever R.L. is," and that A.L.2 is too young to communicate her wishes.

{¶ 17} Based on the evidence presented about the older children's lives and developmental progress in foster care, their chaotic lives with their parents, the realistic possibility of long-term placements of all three children with their foster families, and the parents' prioritization of drug manufacture and use over the needs and safety of their children, the trial court reasonably concluded, by clear and convincing evidence, that the best interest of the children was served by granting permanent custody to GCCS.

{¶ 18} Both parents also assert that the trial court's conclusion that the children could not be placed with family members or friends was against the manifest weight of the evidence. They base this argument on their views that GCCS did not sufficiently investigate alternate placements, where "the consequences are so final and important." We addressed this argument in their prior appeal:

> A review of the record demonstrates that the agency caseworkers made many attempts to find an alternate placement for the children. The agency sent letters regarding the matter to six individuals and couples for whom they did not have a telephone numbers. The letters not only asked whether the addressees were interested in taking the children, but also inquired as to whether they knew of anyone else willing to do so. Of those six, none of the letters were returned and only one person contacted the agency. That person

stated they she and her husband were afraid to get involved. She would not leave her contact information and never had any more contact with the agency.

The agency also was supplied telephone numbers for another six individuals and/or couples. Five of those did not want to take the children. One person was left a voice message, but never contacted the agency. The agency also did home studies on two separate family friends whose names were supplied by Mother and Father. However, those persons were not able to pass the home studies. There is also evidence that the agency caseworkers attempted to locate possible relatives using computer and file searches. * * *

*In re R.L.*, *A.L., and A.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 43-44.

{¶ 19} After the previous appeal and remand, the parents suggested an additional possible placement for the children, the Troyer family, who lived in Holmes County and was, according to the parents, considering taking the children. GCCS investigated this possible placement, but the caseworker testified that "the facility that the family was with was not licensed and that, if I remember correctly, I want to say there was an illegal organization." The caseworker did not elaborate on this characterization or on other details of the investigation, but she testified that GCCS concluded that the Troyers were "not a viable option for placement." Father's motion for placement of the children with the Troyers also acknowledged that the family "wasn't properly licensed."

{¶ 20} The trial court concluded that GCCS "could only place the children in valid, licensed placements or placements approved by [GCCS] after a complete home study as

required by the State"; placement with the Troyers did not satisfy either of these requirements. The record supports the court's conclusion that the Troyers were not an appropriate placement for the children. Moreover, it is clear that Father's desire for placement with the Troyers was focused on ensuring the parents' ability to regain custody of the children upon Mother's and Father's release from prison. However, as discussed below, continued temporary custody of the children was not an option.

{¶ 21} The trial court concluded that GCCS had made reasonable efforts to find alternate placements for the children, and we agreed with this conclusion in our prior Opinion. *In re R.L., A.L., and A.L.* at ¶ 48. These efforts were unsuccessful. Subsequently, GCCS investigated an additional placement suggested by the parents, the Troyers; GCCS found that this placement was not viable, and the trial court reasonably credited this conclusion. There is no basis to conclude that GCCS did not make a reasonable effort in this regard.

{¶ 22} Father argues that the trial court should have continued temporary custody of the children, rather than granting permanent custody to GCCS. However, the language of R.C. 2151.353 and R.C. 2151.415 limits temporary custody of children in the care of a children services agency to a period of two years; a trial court does not have the authority to extend temporary custody beyond this period. *In re M.O.*, 2d Dist. Montgomery No. 25965, 2014-Ohio-3060, ¶ 13-14, citing *In re D.J.*, 2d Dist. Montgomery No. 21666, 2006-Ohio-6304, ¶ 13.

{¶ 23} Mother contends that the children's disinterest in visiting their parents in prison was insignificant and should not have been relied on by the court, because it was not

clear that the children were aware of any option to visit their parents. With respect to this issue, the court found: "The children have not retained a significant or positive relationship with their parents due to the parent's incarceration and none of the children have requested to visit their parents." This finding is not referenced in the court's discussion of the children's best interest, and it does not appear to have been given significant weight in the trial court's decision. The burdensome logistics of taking three children from two foster families to visit parents at two prisons in other parts of the State is apparent, assuming such visits are even allowed; the parents bore the responsibility for these circumstances. The trial court reasonably observed the effect of this circumstance on the children's relationships with Mother and Father, and it did not abuse its discretion in giving some consideration to the effect of this situation on the relationships involved.

{¶ 24} Father contends that the trial court erroneously "prohibited [R.L.'s] attorney from attending" R.L.'s in camera interview with the judge; only R.L., the judge, and the guardian ad litem were present. R.L.'s attorney requested that the court conduct the in camera interview; the record does not indicate that R.L.'s attorney sought to participate in the interview or objected to the court's failure to include him. Father's argument attempts to assert a right on behalf of another party, R.L., which he is not entitled to do. Moreover, Father has not asserted that he (Father) was prejudiced by R.L.'s counsel's failure to attend the interview.

{¶ 25} R.C. 2151.352 provides for a child's right to counsel in juvenile proceedings and states that "[c]ounsel must be provided for a child not represented by the child's parent, guardian, or custodian." R.L. was represented by counsel throughout the proceedings.

R.L.'s attorney could have reasonably concluded that his attendance at the in camera interview was not necessary and/or would not benefit his client. R.C. 2151.352 did not compel his attendance. (The trial court permitted the parties to submit questions to the court prior to the hearing, but it is not apparent from the record whether any of them did so.) R.C. 3109.04(B)(2)(c), upon which Father relies, does not apply to juvenile court proceedings but, like R.C. 2151.352, it does not *require* the presence of the child's attorney at an in camera interview. Moreover, none of the parties objected to the trial court's conducting the in camera interview without R.L.'s attorney. Father has not demonstrated that his rights were infringed by the court's or R.L.'s counsel's handling of R.L.'s in camera interview.[2]

{¶ 26} Father also argues that his due process rights were violated by 1) GCCS's failure to provide him with visitation with his children after our reversal of the trial court's previous judgment granting permanent custody to GCCS; 2) GCCS's determination "from the beginning of the case" to seek permanent custody; and 3) GCCS's pursuit of permanent custody as an additional "punishment" for the parents' criminal acts.

{¶ 27} Even if GCCS focused on permanent custody or another permanent placement of the children from the beginning of the case, as Father alleges, we cannot

---

[2]On March 6, 2014, Father filed a motion with this court for leave to review the transcript of the in camera interview with R.L., which was filed with this court under seal. In a Decision and Entry filed on April 1, 2014, we overruled this motion, but we stated that the motion, as well as GCCS's memorandum in opposition, would "be considered again" when a panel of judges was assigned to the appeal. Upon more detailed review of the record, we agree with the trial court's observation that the guardian ad litem's statement of R.L.'s views on custody, to which Father has had access during these proceedings, accurately characterizes R.L.'s wishes as revealed in the transcript. As such, there is no reason to reconsider our denial of Father's motion or to permit him to review the transcript of the in camera interview with R.L.

conclude that such focus was inappropriate or prejudicial. Father's and Mother's lengthy prison sentences made it clear to the agency early in the case that the parents would be unable to meaningfully participate in the children's upbringing and care for many years and that reunification within a reasonable time would likely not be possible.

{¶ 28} Father has cited no authority for the proposition that GCCS was required to facilitate visitation during his incarceration, nor has he addressed the trial court's implicit conclusion that such visitation was not in the children's best interests. Such a requirement would have placed a substantial burden on the agency, considering the distance at which the parents were incarcerated – at two different locations – and the placement of the children with two different foster families. Moreover, despite our reversal of the trial court's prior judgment (because it had not discussed the statutory factors related to the children's best interest), the court's conclusion that resuming visitation with the parents while the court considered GCCS's second motion for permanent custody was not in the children's best interest was reasonable.

{¶ 29} We agree with Father that loss of permanent custody of one's children is not an automatic consequence (or punishment) for a criminal violation, regardless of the sentence imposed. However, on this record, Father's and Mother's criminal activity adversely affected the children, and the trial court reasonably concluded that the children's best interest was served by granting permanent custody to GCCS and by the permanency afforded by their foster families. Although these consequences – for the children and the parents – resulted in part from the parents' criminal activity, they were not an additional "punishment" for that activity.

{¶ 30}   Father's argument that his due process rights were violated is without merit.

{¶ 31}   Finally, Mother notes the trial court's observation that the older boy, R.L., could refuse to consent to an adoption that did not involve A.L.1, if he and A.L.1 were placed for adoption separately.   She asserts that "this internal possible inconsistency should not be allowed to stand."   She appears to suggest that R.L. might not be made aware of his option to oppose his adoption, and this might contribute to or perpetuate his separation from A.L.1. Although there may be some uncertainty in R.L.'s and A.L.1's futures, it is clear from the record that their foster family has indicated its willingness to keep both of the boys indefinitely.   The trial court seems to have been making the point that continued placement in the foster home together was more likely to ensure that the boys remain together than any attempt at adoption, and it recognized that R.L. could withhold his consent from any adoption that did not involve both boys.   Mother's argument does not suggest how the denial of permanent custody to GCCS would lessen any uncertainty in the boys' futures or increase the chances that the boys would remain together.   Moreover, because there does not seem to be any intention on the part of GCCS or the foster family to place R.L. and A.L.1 for adoption, Mother's argument about how such a hypothetical adoption would unfold is speculative, at best.

{¶ 32}   The trial court reasonably concluded that the best interest of the children would be served by granting permanent custody of the children to GCCS and that at least one of the statutory criteria – that the children had been in the temporary custody of GCCS for 12 of a consecutive 22-month period – had been satisfied.

{¶ 33}   Mother's and Father's assignments of error are overruled.

**{¶ 34}** The judgments of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Stephen K. Haller
Brittany M. Hensley
James S. Armstrong
Jay Adams
Alan Collins
Vicki Perkins
Hon. L. Reisinger
(sitting by assignment)