[Cite as *In re E.M*, 2013-Ohio-333.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2012-09-068 |
| E.M., et al. | : | |
| | | O P I N I O N |
| | : | 2/4/2013 |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2010 JC 04203

Amanda List, 2400 Clermont Center Drive, Suite 204-A, Batavia, Ohio 45103, Guardian Ad Litem

Brafford & Phillips, Suellen Brafford, 285 East Main Street, Batavia, Ohio 45103, for appellant

D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North Third Street, Batavia, Ohio 45103-3033, for appellee

Anita Bechmann, 2340 Clermont Center Drive, Batavia, Ohio 45103, for Daniel M.

**M. POWELL, J.**

{¶ 1} Appellant, the biological mother of four children, appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to a children services agency.

{¶ 2} Clermont County Department of Job and Family Services filed a complaint on November 30, 2010, alleging M.M., appellant's youngest child, was an abused child. The complaint alleged the child tested positive for cocaine and opiates at the time of his birth on November 21, 2010. The child underwent methadone treatment in the hospital for withdrawal. The complaint also alleged that the father refused to complete a drug screen despite multiple opportunities. In addition, the complaint alleged that the father was charged with aggravated robbery and abduction and there was a current warrant for his arrest. The agency also alleged in the complaint that M.M.'s three older siblings were dependent children based on the same facts. The three older children were removed from the home and all four children were placed in the temporary custody of the agency.

{¶ 3} On January 25, 2011, M.M. was adjudicated an abused child and his siblings were adjudicated dependent children. Although they were initially placed with their paternal grandmother, the placement did not pass a home study, and all four children were placed in a foster home.

{¶ 4} Appellant initially entered into drug treatment, but did not successfully complete the treatment. She tested positive for cocaine in February 2012, and admitted to the caseworker that she was using cocaine. The agency then moved for permanent custody of the children on March 22, 2012.

{¶ 5} At a June 19, 2012 hearing on the permanent custody motion, the agency caseworker testified that the children have been in agency custody since November 30, 2010. The caseworker testified that the children's father was convicted of and sentenced on criminal charges at the end of 2010. Because he was incarcerated, no case plan was prepared for the father.

{¶ 6} A case plan was prepared for appellant that required her to complete substance abuse treatment, maintain sobriety, obtain and maintain housing and a source of income and

to attend visitation with the children. The caseworker testified that appellant did not complete the case plan. According to the caseworker, appellant spent a month in treatment at Northland at the beginning of the case. She attended a 90-day program at Stepping Stones in Portsmouth, Ohio, and asked for two extensions, but left before completing the second extension and never returned. The caseworker stated that the treatment center does not consider appellant as having successfully completed the program. The agency asked appellant to follow up on her substance abuse treatment with Clermont Recovery Center (CRC) and about a month later, appellant began services at the facility. In February 2012, she failed a drug screen at CRC, and in May 2012, she failed another drug test and stopped going to CRC. At the time of the hearing, appellant was not engaged in treatment. At the hearing, the caseworker stated that appellant has an appointment scheduled at the end of the week to try and get back into services at CRC.

{¶ 7} The caseworker stated that appellant acknowledges that she needs drug addiction treatment, and has been candid about her drug use with the caseworker. Appellant shared with the caseworker that she was positive for cocaine in February and opiates in March. According to the caseworker, the mother claims she is on "benzos" for an ongoing seizure disorder, which has resulted in some positive tests, but has not been able to provide documentation for the agency. The caseworker indicated appellant reported that she does not have a doctor and goes to the emergency room for her medication, but appellant has not signed releases to allow the agency to verify the medical condition and use of prescription medication.

{¶ 8} With regard to housing, the caseworker testified that she was "not entirely sure" where appellant lived for the first part of the case because appellant has not given an address until very recently. She indicated appellant was "bouncing around," living where she could with family and friends. In December 2011, appellant obtained a trailer that the

caseworker described as a "work in progress." According to the caseworker, appellant has done some work to the trailer, but more work is needed. The caseworker testified that appellant says she is working "under the table" but there has been no verification of her employment. The agency asked the employer to provide a letter, but has not received any response.

{¶ 9} The caseworker further testified that appellant has visitation with her children one time per week and that the children are bonded to their mother. She indicated appellant has been consistent in her visits with the children nearly every week and has missed only one or two visits. She indicated the children were initially placed with their paternal grandmother and great-grandmother, but were placed in a foster home when the home study "fell-through." She indicated the children express most often that they want to live with their grandmother. The caseworker stated that the current foster family is unable to adopt the children, but the agency has identified a family who is interested in adopting all four children and that family is in the process of completing the requirements for adoption. An agency adoption supervisor testified at the hearing and discussed the process of adoption for the children, which includes the children living in the potential home for six months before the adoption.

{¶ 10} All of the children have special needs. The foster mother testified that the two oldest children were not in counseling when they moved into her home, but based on some concerns the foster mother experienced with the children, the children began counseling. E.M., who was 10 years old at the time of the hearing, did well in counseling sessions. She sees an eye doctor and is on an I.E.P. for math, reading and writing.

{¶ 11} The foster mother testified that K.M., who was eight years old at the time of the hearing, attended counseling, and is still in need of the counseling sessions. K.M. has adjustment disorder and depressive symptoms. The foster mother testified that K.M. also

sees an eye doctor and they are in the process of developing an I.E.P. for a learning disability.

{¶ 12} D.M., who was three years old at the time of the hearing, had eye surgery, attended Early Head Start and attended occupational therapy. He has been diagnosed with a sensory disorder and post-traumatic stress disorder. D.M. is on medication for severe behavior problems experienced in the home.

{¶ 13} M.M. was treated for difficulty swallowing and aspirating liquids at birth and the foster mother testified that he has not grown out of the condition. He attended early Head Start and Help Me Grow programs and has some fine motor skills problems as a result of his drug addiction.

{¶ 14} Appellant also testified at the permanent custody hearing. She stated that she has been in her current home for one and one-half months. She explained that she had to tear down walls and take everything out because of mold, and is putting in new floors and walls, but the process is stalled because she needs more money to continue.

{¶ 15} Appellant indicated that she left during her second extension of drug addiction treatment because she felt she was "getting nowhere" with her kids and wanted to be closer to them. Appellant stated she did not feel she needed to be at the treatment facility because she had been through the treatments.

{¶ 16} Appellant testified that she reported her failed drug screens to the caseworker. She claimed that the caseworker said appellant did not need paperwork to verify her prescription drug use and the caseworker did not ask for a medical release. Appellant claimed she was not at CRC on May 9, 2012, when a drug test was positive, and said she would have called the caseworker if she had a positive test. Appellant claimed the positive test for opiates was due to a prescription she got at the hospital after she had a seizure and fell. She testified that she missed a lot of appointments at CRC because transportation was

an issue. She admitted that she has struggled with a drug problem all her life and as recently as February was doing cocaine.

{¶ 17} A Child Support Enforcement Agency worker testified that a child support order was established for appellant on April 1, 2011. The worker stated that appellant owes $4,184.90 on the child support order and the agency received only $358.12 in payments from a wage assignment order from a job appellant had with Belcan in January. Appellant testified that she is currently working a roofing job at $8.50 an hour for 35 hours a week that is "under the table." She explained that she is not able to drive and relies on her parents and mother-in-law to take her where she needs to go.

{¶ 18} A magistrate granted the motion for permanent custody, finding that the children had been in agency custody 12 of 22 months and that granting permanent custody was in the best interest of the children. After a hearing, objections to the magistrate's decision were overruled on September 12, 2012. Appellant now appeals the trial court's decision to grant permanent custody of the children to the agency and raises the following assignment of error for our review:

{¶ 19} THE TRIAL COURT ERRED WHEN IT FOUND, BY CLEAR AND CONVINCING EVIDENCE, THAT GRANTING PERMANENT CUSTODY OF THE CHILDREN TO THE CLERMONT COUNTY DEPARTMENT OF JOB & FAMILY SERVICES ("AGENCY") WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 20} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150

- 6 -

Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 21} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 22} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children have been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the children's best interest.

{¶ 23} Appellant first argues that the court abused its discretion in finding clear and convincing evidence to grant permanent custody to the agency. However, appellant's argument regarding this issue focuses on the court's dependency finding and the decision to place the children into foster care. Appellant contends that a dependency finding is based on whether a child is receiving proper care. She argues that the older three children lived with the parents without any concerns of the agency until the youngest child was born, and there

was no indication that the agency needed to place the children in foster care.

**{¶ 24}** We need not reach the merits of this argument, however. An order adjudicating a child abused, neglected or dependent and awarding temporary custody is a final appealable order. *In re Murray*, 52 Ohio St.3d 155 (1990). The determination that a child is abused, neglected or dependent and award of temporary custody to a children services agency cannot be raised on appeal from a court's decision to grant permanent custody. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810.

**{¶ 25}** Appellant also argues that the trial court abused its discretion in granting permanent custody to the agency. She argues that the best interest factors support her argument. She contends the children are bonded to her, want to remain with family, that she spent six months in treatment and was unable to work on her case plan during that time. She also argues that the children will have to be moved again to be adopted and K.M. has adjustment disorder and depressive symptoms, causing her to struggle with changes in her environment. Appellant argues that she has obtained employment, is engaged in drug treatment and has housing, and she can provide a permanent home for the children.

**{¶ 26}** R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 27} With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that the evidence indicated that appellant is bonded to her children and the children are bonded to her. In considering R.C. 2151.414(D)(1)(b), the court found that according to the caseworker, the children most frequently expressed a desire to live with their paternal grandmother. The court further found that they have also expressed to the caseworker that they would like to live with their mother, but have strongly expressed that they want to live with their grandmother. The court further found that the guardian ad litem's report indicated that the two older children, E.M. and K.M., wish to live with their grandmother but the younger two children cannot state their preference of residency.

{¶ 28} With respect to R.C. 2151.414 (D)(1)(c), the juvenile court found the parents cared for the three older children before they were taken into agency custody and the caseworker acknowledged this was a significant amount of time. The court further found that at the time of the hearing, the children had been in the same foster home for more than a year and that they have been in the temporary custody of the agency for more than 12 of 22 months.

{¶ 29} In considering R.C. 2151.414(D)(1)(d), the court found that the children need a legally secure, permanent placement. The guardian ad litem recommended permanent custody for the children and recommended that a permanent placement be identified and the children start a transition. The court further found that the paternal grandmother and great-grandmother asked to be considered for placement, but the home study was not approved.

The court further considered the fact that the current foster parents did not want to adopt the children, but noted that the caseworker reported a family who was willing to take all four children. The court further indicated that an adoption supervisor detailed the steps necessary for adoption approval, including the required six-month placement period.

{¶ 30} The court also found that the foster mother testified regarding the special needs of the children, along with the educational and other services the children require. The court found that "unquestionably, further changes in placement would be disruptive; particularly with respect to the three older children who have emotional issues."

{¶ 31} The court considered the fact that the father was incarcerated and the fact that appellant admits that she has had drug problems in the past. The court found that appellant described what she was doing to control her drug problem and that she had only recently made efforts to provide stable housing. The court found that appellant thinks if she were given more time, she would get the house in order and complete the Clermont Recovery Center program.

{¶ 32} The court concluded that the case began over one and one-half years prior to the hearing because of the consequences of appellant's drug use and its impact on her youngest child. The court found that appellant indicated drugs were involved all her life and she knew she had to "get right" when she lost her children. The court noted appellant used cocaine in February 2012 and has not successfully completed treatment.

{¶ 33} The court determined that appellant cannot presently provide the kind of legally secure placement the children, all of whom have special needs, require. The court further found that based on appellant's history and conduct over the course of the agency's attempt for over 18 months to reunify her children with her, it does not appear that the children could be placed with appellant in a reasonable time. The court stated that although it will require another placement and a legal waiting period for adoption, the type of legally secure

- 10 -

placement the children need cannot be achieved without a grant of permanent custody to the agency.

{¶ 34} Based on consideration of the above factors, the court determined that it was in the best interest of the children to grant permanent custody to the agency. We find no error in this determination. The court recognized that the children are bonded to appellant and that an additional placement and waiting period would have to be completed before an adoption could take place. The court recognized that the children have special needs and need permanency in their lives. Although appellant has made some progress, she still struggles with addiction, does not have housing that is currently appropriate for the children, and cannot provide the stability the children need. Appellant's assignment of error is overruled.

{¶ 35} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.