[Cite as *In re D.K.W.*, 2014-Ohio-2896.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NO.   CA2014-02-001 |
| D.K.W. | : | |
| | | O P I N I O N |
| | : | 6/30/2014 |
| | : | |
| | : | |


APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20113121


Lauren Raizk, 145 North South Street, Wilmington, Ohio 45177, for D.K.W.

Holly M. Simpson, 6284 Taylor Pike, Blanchester, Ohio 45107, for appellant

Susan Zurface Daniels, 116 North Walnut Street, Wilmington, Ohio 45177, for D.W.

Virginia Vanden Bosch, 9506 West State Route 73, Wilmington, Ohio 45177, Guardian Ad Litem

William C. Randolph, 1025 S. South Street, Suite 400, P.O. Box 568, Wilmington, Ohio 45177, for appellee, Clinton County Children's Services


   **M. POWELL, J.**

   {¶ 1}   Appellant, H.S. (Mother), appeals the decision of the Clinton County Court of Common Pleas, Juvenile Division, granting permanent custody of her son, D.K.W., to appellee, Clinton County Children Services (the Agency).

{¶ 2} In August 2011, D.K.W.'s parents were involved in a physical altercation during which D.K.W.'s father (Father) kicked the carseat with the child inside as Mother was trying to leave with the child. After Mother left, Father, although uninjured, ran down the street screaming he had been shot. Father later revealed that on the evening of the altercation, he and Mother were both abusing bath salts.

{¶ 3} On September 29, 2011, the Agency filed a complaint alleging that ten-month-old D.K.W. was abused, neglected, and dependent. The Agency was initially granted protective supervision on an interim basis. On December 8, 2011, the juvenile court granted temporary custody of D.K.W. to the Agency. D.K.W. was placed with a foster family that same day. On December 13, 2011, following D.K.W.'s parents' plea of admit to the abuse allegation, the juvenile court adjudicated D.K.W. abused (the neglect and dependent allegations were dismissed). Temporary custody with the Agency was continued.

{¶ 4} A case plan was implemented to reunify Mother and Father with their son. The case plan required both parents to complete a drug and alcohol assessment and follow all recommendations, obtain and maintain stable housing and income, and complete a parenting class. Mother was also required to complete a mental health assessment and follow all recommendations. Reunification was unsuccessful as both parents failed to participate in a substance abuse treatment program, continued to use drugs, specifically heroin, failed to obtain stable housing and income, and failed to consistently attend visitation. Mother also failed to complete a mental health assessment.

{¶ 5} On January 24, 2012, with the agreement of the parents and as recommended by the child's guardian ad litem, D.K.W. was placed in the temporary custody of relatives, the Runyons. By all accounts, D.K.W. was comfortable and well adjusted in the Runyons' home, bonded with them and their two children, and had a great relationship with them. The Agency was very satisfied with the Runyons' care of the child. D.K.W. remained in the

temporary custody of the Runyons until December 2012 when the Runyons told the Agency they could no longer care for the child due to familial hardship. Consequently, on December 18, 2012, the juvenile court granted temporary custody to the Agency and the child was placed with the same foster family.

{¶ 6} On July 18, 2013, the Agency moved for permanent custody of D.K.W. A hearing on the motion was held on November 18, 2013, and continued on January 9, 2014. Amanda Couser, a caseworker for the Agency, was the sole witness to testify. In a report filed a few days before the permanent custody hearing, the guardian ad litem concluded it was in D.K.W.'s best interest to grant permanent custody to the Agency. Counsel for the parties declined to cross-examine the guardian ad litem during the permanent custody hearing.

{¶ 7} On January 28, 2014, the juvenile court found by clear and convincing evidence that D.K.W. had been abandoned by his parents and that it was in the best interest of the child to grant permanent custody to the Agency.

{¶ 8} Mother appeals, raising two assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN REFUSING TO GRANT MOTHER'S REQUEST FOR A CONTINUANCE TO ALLOW FAMILY MEMBERS TO SEEK CUSTODY OF THE MINOR CHILD WHEN THE COURT ALLOWED A CONTINUANCE IN PROGRESS TO RESOLVE A SCHEDULING PROBLEM.

{¶ 11} Mother argues the juvenile court abused its discretion when it denied her motion to continue the permanent custody hearing to allow exploration of a potential placement with the Runyons.

{¶ 12} The permanent custody hearing began on November 18, 2013, a Monday. On November 15, 2013, the Friday before the hearing, Mother moved to continue the hearing on

the ground, inter alia, that the Runyons were "interested in adopting and/or obtaining legal custody" of D.K.W. At the beginning of the hearing, Mother's counsel told the juvenile court that the Runyons "would like to re-enter the bidding for legal custody" of D.K.W. and that they were "interested in again exploring that possibility." The juvenile court denied the motion on the grounds the case had languished for two years, the Runyons had not moved to either intervene or for legal custody, and D.K.W. needed finality. Following the caseworker's testimony, the hearing was continued due to scheduling issues.[1] Mother's counsel advised the juvenile court that Mr. Runyon would testify as a witness. When the permanent custody hearing resumed on January 9, 2014, Mother's counsel advised the court that they would not call any witness and that they rested instead.

{¶ 13} Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure a fair treatment for the parties." An appellate court will not reverse a trial court's decision denying a motion for continuance absent an abuse of discretion. *In re R.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 31.

{¶ 14} Whether placement with a relative is an option that can provide a legally secure placement without a grant of permanent custody may be a relevant consideration under the best interest factors in R.C. 2151.414(D)(1)(d). *In re D.S.*, 12th Dist. Clermont Nos. CA2010-08-058, CA2010-08-064, and CA2010-08-065, 2011-Ohio-1279, ¶ 41. However, the statute does not require a juvenile court to consider relative placement before granting a motion for permanent custody. *Id.*; *In re L.S.*, 8th Dist. Cuyahoga No. 95809, 2011-Ohio-3836, ¶ 26.

{¶ 15} We find that the juvenile court did not abuse its discretion in denying Mother's late request for a continuance. At the time Mother moved for a continuance, the case was

---

1. The record shows that the juvenile court allocated 90 minutes for the permanent custody hearing as requested by counsel. However, counsel for both parents were unable to present their case during the allocated 90 minutes and the juvenile court had other cases to attend on the docket. Consequently, the permanent custody hearing was continued in progress to January 9, 2014.

two years old. The record shows the Runyons had temporary custody of D.K.W. for 11 months but ultimately asked that D.K.W. be removed from their custody. Thereafter, despite the foster family's open door visitation policy, the Runyons visited D.K.W. only twice. Further, the Runyons never filed a motion to intervene or for legal custody of D.K.W. either before the permanent custody hearing or in the intervening eight weeks between the hearing dates. *In re D.S.* at ¶ 41; *In re R.L.*, 2012-Ohio-6049 at ¶ 32 (no abuse of discretion in denying continuance motion filed six days before the hearing to investigate more individuals for possible relative placements).

{¶ 16} Mother's first assignment is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY TO THE AGENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} Mother argues that the juvenile court's decision granting permanent custody to the Agency was not in D.K.W.'s interest and that such finding was against the manifest weight of the evidence.

{¶ 20} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000).

{¶ 21} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).

{¶ 22} Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 22. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re T.D.*, 12th Dist. Preble No. CA2009-01-002, 2009-Ohio-4680, ¶ 15.

{¶ 23} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors, including, but not limited to: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (c) the custodial history of the child; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) (including, as relevant here, whether the parent has abandoned the child) apply in relation to the parents and child.

{¶ 24} The juvenile court found by clear and convincing evidence, and Mother does not dispute, that D.K.W. is an abandoned child. Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parents of the child have failed to visit or maintain contact

with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." The record shows that Mother had no contact at all with D.K.W. from February 11, 2013, to June 19, 2013. Likewise, Father had no contact at all with D.K.W. from January 2, 2013, to June 2013. The second prong of the permanent custody test is therefore satisfied.

{¶ 25} Mother, however, disputes the juvenile court's finding that granting permanent custody of D.K.W. to the Agency was in the child's best interest. Specifically, Mother argues the juvenile court failed to earnestly consider all relative placements for D.K.W., especially the Runyons in light of their expressed interest in obtaining custody of D.K.W. again.

{¶ 26} In considering D.K.W.'s interaction and interrelationship with relatives and any other person who may significantly affect the child pursuant to R.C. 2151.414(D)(1)(a), the juvenile court found that following the December 2012 removal of the child from their care, the Runyons had only visited the child twice, once in April 2013 and once in June 2013. The court further found there was no testimony about any interaction or interrelationship between the Runyons and D.K.W. The juvenile court also found that while D.K.W.'s great-grandmother had visited the child twice a month, there was no testimony about any interaction or interrelationship between the great-grandmother and D.K.W. Finally, the juvenile court found that D.K.W. interacts well and has a healthy bond with the foster family.

{¶ 27} Amanda Couser, a caseworker for the Agency, was the sole witness to testify at the permanent custody hearing. The guardian ad litem's report was filed a few days before the hearing. In her report, the guardian ad litem concluded that upon interviewing the Runyons, the great-grandmother, and the foster parents, it was in D.K.W.'s best interest to grant permanent custody to the Agency. Couser testified D.K.W. was in need of a legally secure permanent placement and that the Agency was unable to recommend any relative placement at this point.

{¶ 28} Specifically, with regard to the great-grandmother, Couser testified she has regularly visited D.K.W. twice a month, the child interacts very well with the great-grandmother, and the great-grandmother has expressed an interest in having custody of D.K.W. Couser testified, however, that at the beginning of the case, the great-grandmother admitted lying for Mother in order to keep D.K.W. from being removed from the home. Couser also testified that based upon numerous conversations with Mother, Mother did not want the great-grandmother to have custody of D.K.W. In addition, it was Couser's understanding that when the Runyons had temporary custody of D.K.W., the child would spend weekends at the great-grandmother's house. In turn, the great-grandmother "permitted [Mother] to visit at her house while she would have him on the weekends, which was not * * * permitted."

{¶ 29} In her report, the guardian ad litem stated the great-grandmother was close to D.K.W. and visited him, and that she would take custody of D.K.W if she could. However, the great-grandmother "ha[d] lied to the Agency in the past to protect mother, and there is doubt she would be able to protect [the child] from mother or father." The great-grandmother has never filed a motion for legal custody of D.K.W.

{¶ 30} With regard to the Runyons, Couser testified that during the 11 months they had temporary custody of D.K.W., the Agency never had any concerns and the child was well adjusted and was bonded with the Runyons and their two children. In fact, it was the Agency's intention to have the child live permanently with the Runyons. Ultimately, though, the Runyons told the Agency they could no longer care for D.K.W. due, in part, to familial hardship. Another reason provided by the Runyons was their hope that placing D.K.W. back in foster care would prompt his parents to comply with the case plan. Couser testified that following the child's removal from their custody, the Runyons visited D.K.W. only twice despite the foster parents' open door visitation policy. A third visit was cancelled by the

Runyons.

{¶ 31} In her report, the guardian ad litem noted that the Runyons (1) gave up custody of D.K.W. "in the hopes that [Mother and Father] would 'see the light' and give up drugs," (2) now realize it was a mistake, (3) have hired an attorney to assist them in adopting D.K.W. if the Agency gets permanent custody, and (4) hope to get D.K.W. back in their care. As stated earlier, the Runyons have never filed a motion for legal custody of D.K.W.

{¶ 32} Couser testified D.K.W. has been with the same foster family throughout the case, initially for a month after he was removed from his parents, and since December 18, 2012, when the Runyons gave up custody. Couser testified that D.K.W. is very comfortable in the foster parents' home, appears very well adjusted and bonded, and has a healthy attachment with the foster family. Couser also testified the foster parents have been great advocates in ensuring D.K.W. receives needed speech services.

{¶ 33} In her report, the guardian ad litem noted that D.K.W. is bonded with, and is flourishing in the care of the foster family. The foster parents enjoy having him in their home and their one-year-old daughter and D.K.W. are attached to each other. The foster parents are "foster to adopt."

{¶ 34} In light of the foregoing, we find that the juvenile court did not abuse its discretion in determining that neither the Runyons nor the great-grandmother were a viable placement for D.K.W. The juvenile court is vested with discretion to determine what placement option is in the child's best interest. *In re B.K.*, 12th Dist. Fayette No. CA2006-03-011, 2006-Ohio-4424, ¶ 25. As stated earlier, a juvenile court is not required to consider placing a child with a relative before granting permanent custody. *In re D.S.*, 2011-Ohio-1279 at ¶ 41. The willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody. *In re Patterson*, 134 Ohio App.3d 119, 129 (9th Dist.1999).

{¶ 35} The record also shows that the juvenile court properly considered all other relevant factors under R.C. 2151.414(D)(1). With regard to D.K.W.'s wishes, the juvenile court noted the child was not of sufficient maturity to express his wishes as he was only three years old. The court, however, reviewed the guardian ad litem's detailed report and noted the guardian ad litem's recommendation that a grant of permanent custody to the Agency was in D.K.W.'s best interest. *See* R.C. 2151.414[(D)(1)(b).

{¶ 36} The juvenile court reviewed D.K.W.'s custodial history in detail. *See* R.C. 2151.414(D)(1)(c). Based on Couser's testimony and the guardian ad litem's report, the juvenile court found that D.K.W. was in need of a legally secure placement that could not be achieved without a grant of permanent custody to the Agency. *See* R.C. 2151.414(D)(1)(d). The juvenile court also found that both parents had abandoned D.K.W., *see* R.C. 2151.414(E)(10), and noted "the lack of any progress on the case plan by either parent notwithstanding reasonable diligent case planning and efforts by the agency."

{¶ 37} In light of the foregoing, and after a thorough review of the record, we find that the juvenile court's decision granting permanent custody to the Agency is in D.K.W.'s best interest and not against the manifest weight of the evidence. "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61. Courts are not required to favor a relative if, after considering all the relevant factors under R.C. 2151.414(D)(1), it is in the child's best interest to grant permanent custody to a children services agency. *Id.*

{¶ 38} Mother's second assignment of error is overruled.

{¶ 39} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.