[Cite as *In re M.A.-L.*, 2015-Ohio-4816.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| M.A.-L., et al. | : | CASE NO. CA2015-07-129 |
| | : | O P I N I O N<br>11/23/2015 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0404

Richard N. Koehler II, 6 South Second Street, Suite 205, Hamilton, Ohio 45011, guardian ad litem

Nicole M. Stephenson, 30 North "D" Street, Hamilton, Ohio 45013, attorney for children

Heather Felerski, P.O. Box 181342, Fairfield, Ohio 45018, for appellant, J.A.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for appellee, Butler County Children Services

**RINGLAND, J.**

{¶ 1}   Appellant, the biological mother (Mother) of M.A.-L, J.A.L., and K.A., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to appellee, the Butler County Department of Job and Family Services

(BCDJFS). For the reasons detailed below, we affirm.

{¶ 2} On July 23, 2013, BCDJFS filed a complaint alleging appellant's children were abused, neglected, and dependent children. At the time, the children were between the ages of seven years and 18 months. The complaint alleged that Mother was abusing drugs, neglecting her children by maintaining a dirty home, and failing to provide food and medical care. The children were removed from the home after authorities went to the residence to perform a welfare check on the children, and discovered that Mother had left the children alone. It was alleged that Mother had fled through an upstairs window when the authorities arrived because she had an outstanding warrant for her arrest. The children were eventually placed in the temporary custody of BCDJFS.

{¶ 3} At a pretrial hearing, Mother stipulated that the children were dependent and the abuse and neglect allegations were dismissed. In addition, the juvenile court found the father of M.A.L. and J.A.L. to be in default. Thereafter, the juvenile court adopted a case plan and ordered a home study to be completed for maternal grandmother. However, maternal grandmother failed that home study and was denied placement because she previously had nonrelative children removed from her home and had a history of allowing inappropriate people to move into her residence.

{¶ 4} On May 2, 2014, K.A.'s father made his first appearance and was ordered to participate in a substance abuse assessment.[1] In addition, Mother was ordered to complete a second substance abuse assessment because she tested positive for cocaine and had two prior possession charges.

{¶ 5} On October 7, 2014, BCDJFS filed a motion for permanent custody for the children. The juvenile court held a pretrial hearing on January 22, 2015, which Mother and

---

1. K.A.'s father had recently completed a prison sentence related to his conviction for the possession and trafficking of heroin.

- 2 -

both fathers failed to appear.[2] Therefore, the juvenile court found Mother and both fathers to be in default.

{¶ 6} During the pendency of these proceedings, Mother was charged with possession of heroin in violation of R.C. 2925.11, a fifth-degree felony and was involved with the drug court. Later, Mother was charged with a violation of her community control and was ordered to serve a stated prison term of 12 months.

{¶ 7} Approximately one month after her sentencing hearing, on March 3, 2015, Mother filed a motion requesting the children be placed in the legal custody of their maternal grandmother and asked that maternal grandmother be permitted to proceed in her place. Likewise, maternal grandmother filed a request to be joined as a party and considered for placement as the children's legal custodian. In addition, maternal grandmother requested a continuance, which was renewed by Mother at the March 11, 2015 permanent custody hearing. The juvenile court denied Mother's request for a continuance and also denied the motion requesting legal custody to maternal grandmother with respect to M.A.L. and J.A.L. because the motion was untimely filed and was not served on their father. However, the juvenile court permitted Mother to pursue the legal custody motion with regard to K.A., as the child's father had waived service.

{¶ 8} During the permanent custody hearing, the state presented the testimony of a BCDJFS caseworker, the children's therapist, and the children's foster mother. The caseworker testified that the children were placed in their current foster home in September 2013 and were healthy, happy, and comfortable in that arrangement. During the pendency of the case Mother had failed to complete her case plan requirements, had failed drug tests,

---

2. The father of M.A.L. and J.A.L. was convicted of aggravated possession of drugs, possession of heroin, and felonious assault. He was sentenced to four years imprisonment during a sentencing hearing held while these proceedings were ongoing.

and was incarcerated at the time of the permanent custody hearing. In addition, although the caseworker testified that maternal grandmother and the children were bonded with one another, she explained that maternal grandmother had failed her home study and placement with her would not be appropriate.

{¶ 9} Next, the state called the foster mother who testified that the children had excelled in their placement and had demonstrated significant improvements in their behavior and social interactions. The foster mother testified that the children are well-bonded with the family and she and her husband would seek to adopt the children if BCDJFS were granted permanent custody.

{¶ 10} Finally, the state presented the testimony of the children's therapist who testified that the children had exhibited significant improvement during their placement with the foster family and were more open and less anxious around other people. Furthermore, the children's therapist testified that the foster parents have demonstrated an ability to place the children's needs first and have provided the children with a healthy and positive environment.

{¶ 11} Mother's sole witness was maternal grandmother who testified that she would like legal custody of the children because Mother was presently incarcerated. In her testimony, maternal grandmother explained that she was well-bonded with the children and regularly attended the children's basketball games and other extracurricular activities. Although it was undisputed that the children have a strong bond with their maternal grandmother, there was also evidence that maternal grandmother lacked insight into the concerns related to this case.

{¶ 12} Following the presentation of evidence, the juvenile court granted the motion for permanent custody. Mother then filed objections to the magistrate's decision, which were overruled. Mother now appeals the decision of the juvenile court, raising a single assignment

of error for review.

{¶ 13} THE COURT ERRED IN DENYING THE CONTINUANCE REQUESTED BY APPELLANT TO PERFECT SERVICE ON A PREVIOUSLY FILED MOTION FOR LEGAL CUSTODY TO A RELATIVE.

{¶ 14} In her sole assignment of error, Mother argues the trial court abused its discretion when it denied her request for a continuance in order to properly serve the motion for legal custody on all parties. In so doing, Mother claims the denial of her continuance prevented the juvenile court from fully considering the best interests of the minor children. We disagree.

{¶ 15} An appellate court will not reverse a trial court's decision denying a motion for continuance absent an abuse of discretion. *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 13. The factors a trial court should consider in ruling on such a motion include the length of the delay requested; the inconvenience to other litigants, witnesses, opposing counsel and the trial court; whether the requested delay is for a legitimate reason or dilatory and contrived; whether the party requesting the continuance contributed to the circumstances giving rise to the requested continuance; and any other factor relevant to the particular facts and circumstances of the case. *In re D.C.*, 12th Dist. Fayette No. CA2015-03-006, 2015-Ohio-3178, ¶ 14. Additionally, Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

{¶ 16} In the present case, the permanent custody hearing was scheduled for March 11, 2015. On March 3, 2015, eight days prior to the permanent custody hearing, Mother filed a motion requesting the juvenile court to consider placement of the children in the legal custody of maternal grandmother. A separate motion to continue was filed on behalf of maternal grandmother the following day. The juvenile court denied the motion on the

grounds that this matter had been pending for nearly 20 months, Mother failed to perfect service on the children's fathers, and the children needed finality.[3]

{¶ 17} Based upon our review, we find that the juvenile court did not abuse its discretion in denying Mother's late request for a continuance. At the time of the request for a continuance, the case was 20 months old and the children had been placed in the temporary custody of their foster family since July of 2013. The record reflects that Mother was sentenced to a prison term on February 3, 2015, yet failed to file a suggestion of legal custody with maternal grandmother until approximately one week from the date of the final hearing. *See In re D.K.W.*, 2014-Ohio-2896 at ¶ 15 (no abuse of discretion in denying late request for a continuance). Furthermore, the record reflects that maternal grandmother had failed an initial home study regarding placement of the children and had not requested an updated home study. The reasons for denial of the home study included the fact that maternal grandmother had a history of residing with inappropriate individuals and previously had two unrelated children removed from her custody due to her failure to follow court orders. Accordingly, we find the trial court did not err in denying a continuance and we overrule Mother's assignment of error to the contrary.

{¶ 18} In overruling Mother's sole assignment of error, we also find the trial court's decision awarding temporary custody of the children to BCDJFS was supported by the weight of the evidence and was in the children's best interest. As this court has previously stated, "[b]efore a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met." *In re K.W.*, 12th Dist.

---

3. Although the juvenile court denied the request for a continuance, the court did allow maternal grandmother to present evidence regarding her motion for legal custody with respect to K.A. because K.A.'s father had waived the service requirement.

Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 19} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 20} In this case, it is undisputed that the children had been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody, and therefore we will address the best interest

factors considered in the award of permanent custody. R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 21} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that the respective fathers had not maintained regular contact with the children through their lives and were both found to be in default during these proceedings. In addition, the father of M.A.L. and J.A.L. was sentenced to a four-year prison term for drug offenses beginning in November of 2013. Mother, likewise, is currently serving a period of incarceration. The court also found that the children are very bonded with their foster parents, who have expressed a desire to adopt the children should permanent custody be granted to BCDJFS.

{¶ 22} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that it did not conduct an in camera review of the children, but the children's attorney did reflect

their wishes. The juvenile court also considered the report and recommendation of the GAL, who recommended the children be placed in the permanent custody of BCDJFS.

{¶ 23} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of the children and found the children had been in the temporary custody of BCDJFS for 12 months of a consecutive 22-month period according to the statutory definition.

{¶ 24} In considering R.C. 2151.414(D)(1)(d), the juvenile court found the children are in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way the children's needs can be achieved. The juvenile court found that Mother is not in a position to assume her parental responsibilities. Mother is currently incarcerated and has failed to adequately and timely address her substance abuse issues. Although Mother did participate in a parenting program, she failed to complete any of the case plan services set in place to assist with reunification and failed to complete substance abuse treatment.

{¶ 25} Furthermore, while there was testimony to suggest the children are bonded with their maternal grandmother, the juvenile court also found that it was not in the children's best interest to be placed with her. Specifically, the juvenile court noted that maternal grandmother has not passed a home study to receive the temporary custody of the children. The court noted that maternal grandmother had two nonrelative children involuntarily removed from her custody due to her failure to follow court orders, and she had a history of having inappropriate individuals live with her. Additionally, the court noted concerns about maternal grandmother's lack of insight into the sanitary conditions of Mother's house and substance abuse issues related to the initial complaint to the agency.

{¶ 26} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that both of the respective fathers in this matter have not had any contact with the children for

more than 90 days and have abandoned them as a matter of law.

{¶ 27} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and was not against the manifest weight of the evidence. At the time of the permanent custody hearing, the children had been in the temporary custody of the children for nearly 20 months and Mother was incarcerated. Although there was testimony that the children were bonded with maternal grandmother, the trial court, as noted above, addressed its reservations with placing the children with her. Among other things, the trial court considered that maternal grandmother had failed to complete a satisfactory home study and also had a history with children's services. While in foster care, the children have been provided a stable and comfortable environment and have become bonded with their foster parents. In light of the foregoing, we find the juvenile court's decision was not against the manifest weight of the evidence and find no error in the juvenile court's decision to grant permanent custody of the children to BCDJFS. Mother's sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.