[Cite as *In re S.E.*, 2018-Ohio-642.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


IN THE MATTER OF:                    :
S.E., et al.

                                     :        CASE NO. CA2017-10-016

                                     :        O P I N I O N
                                              02/20/2018
                                     :

                                     :


APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos.: 20153040, 20153041, 20153042


Bieser, Greer & Landis, LLP, Matthew M. Suellentrop, 6 North Main Street, Suite 400, Dayton, Ohio 45402-1908, for appellant

William C. Randolph, Clinton County Assistant Prosecuting Attorney, 103 E. Main Street, Wilmington, Ohio 45177, for appellee

Kim Vandervort, c/o Clinton County Juvenile Court, 46 South Street, Wilmington, Ohio 45177, guardian ad litem


**S. POWELL, P.J.**

{¶ 1} Appellant, F.E., appeals from the decision of the Clinton County Court of Common Pleas, Juvenile Division, granting permanent custody of her three children to appellee, Clinton County Children Services ("CCCS"). For the reasons outlined below, we affirm.

{¶ 2} F.E. is the mother of three children, Sh. E., Se. E., and Sk. E., born on March 27, 2012, January 30, 2014, and July 13, 2015, respectively. The children's father is not part of this appeal.

{¶ 3} On July 15, 2015, two days after Sk. E. was born, CCCS filed complaints alleging Sh. E. and Se. E. were neglected and dependent children, whereas Sk. E. was alleged an abused child. Two weeks later, on July 29, 2015, CCCS orally moved to amend its complaint regarding Sk. E. from a claim of abuse to a claim of dependency. The allegations of neglect and dependency for all three children were based on claims that F.E. admitted to using drugs while pregnant with Sk. E., that the family was homeless and currently sleeping in their car, and that Sh. E. and Se. E. had not eaten in several days. The record further indicates that the family had previously been kicked out of a local homeless shelter and that no appropriate relatives were willing to take them in. After holding a hearing on the matter, the juvenile court ordered temporary custody of the children to CCCS and the children were appointed with a guardian ad litem.

{¶ 4} On October 7, 2015, after F.E. waived bifurcation of the adjudication and disposition hearings, the matter was heard before a juvenile court magistrate. Following this joint hearing, on October 27, 2015, the magistrate issued a decision adjudicating each of the three children neglected children with the allegations of dependency being dismissed. The magistrate further determined that it was in the children's best interests to remain in the temporary custody of CCCS. A case plan was then established that required F.E. to obtain and maintain stable employment and appropriate housing, as well as complete parenting classes and a drug and alcohol assessment. Later that day, the juvenile court issued an entry adopting the magistrate's decision in its entirety. F.E. did not appeal from the juvenile court's decision.

{¶ 5} On November 2, 2016, as part of its annual review hearing, the juvenile court

found it was in the children's best interest to remain in the temporary custody of CCCS. Several months later, on April 21, 2017, CCCS moved for permanent custody of the children. In support of this motion, CCCS noted that the children had been in its continuous temporary custody since their original placement on July 15, 2015. CCCS further noted that F.E. had recently had a physical altercation with the children's father, who at that time lived in a trailer with F.E. and her boyfriend, that resulted in the father being charged with domestic violence and assault. Concluding, CCCS alleged that F.E. and the children's father "have an unstable relationship and have made little if any progress in exhibiting appropriate interaction with the children," thus indicating the children's need for a safe and secure permanent placement.

{¶ 6} On September 12, 2017, the juvenile court held a hearing on the motion for permanent custody. At this hearing, it is undisputed that the children's father was not present and that F.E. did not testify. Rather, the juvenile court heard testimony from a CCCS caseworker and the children's maternal grandmother. The guardian ad litem also briefly addressed the juvenile court and thereafter submitted a report for the juvenile court's consideration that recommended CCCS be granted permanent custody of the children. After taking the matter under advisement, on September 27, 2017, the juvenile court issued a decision granting CCCS's motion for permanent custody upon finding such a decision was in the children's best interests.

{¶ 7} F.E. now appeals from the juvenile court's decision granting permanent custody of her three children to CCCS, raising three assignments of error for review. For ease of discussion, F.E.'s second and third assignments of error will be addressed together.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE COURT COMMITTED PLAIN ERROR IN AWARDING PERMANENT CUSTODY OF ALL THREE CHILDREN TO CLINTON COUNTY CHILDREN'S SERVICES

- 3 -

WHEN THERE WAS NO BASIS TO ADJUDICATE [SK. E.] A NEGLECTED CHILD.

{¶ 10} In her first assignment of error, F.E. argues the juvenile court committed plain error by adjudicating Sk. E. a neglected child when CCCS had never previously alleged Sk. E. was neglected.[1]  However, while it may be true that CCCS only alleged that Sk. E. was an abused and dependent child, as noted above, F.E. never appealed the juvenile court's decision to adjudicate her three children neglected and to award temporary custody to CCCS.  As a result, because the juvenile court's decision adjudicating her three children as neglected was a final appealable order, *see In re Murray*, 52 Ohio St.3d 155 (1990), syllabus, F.E. is now barred from raising that issue as part of this appeal.  *See, e.g., In re E.M.*, 12th Dist. Clermont No. CA2012-09-068, 2013-Ohio-333, ¶ 24 ("[t]he determination that a child is abused, neglected or dependent and award of temporary custody to a children services agency cannot be raised on appeal from a court's decision to grant permanent custody"); *see also* R.C. 2151.414(A)(1).  In so holding, we note that even if F.E. could raise such a challenge, which she cannot, based on the facts and circumstances here, the record overwhelming supports the juvenile court's decision to adjudicate all three children as neglected.  Therefore, finding no error in the juvenile court's decision, let alone plain error, F.E.'s first assignment of error is overruled.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT COMMITTED ERROR IN AWARDING PERMANENT CUSTODY OF ALL THREE CHILDREN TO CLINTON COUNTY CHILDREN'S SERVICES WHEN A PORTION OF ITS DECISION WAS NOT SUPPORTED BY THE EVIDENCE.

{¶ 13} Assignment of Error No. 3:

---

1. The record indicates CCCS filed an amended complaint alleging Sk. E. was a neglected and dependent child on August 13, 2015.  The juvenile court, however, seemingly ignored that filing, having made no reference to it as part of its subsequent orders and/or entries issued in this case, instead recognizing only CCCS's oral motion to amend its complaint to include an allegation that Sk. E. was dependent.

{¶ 14} AN AWARD OF PERMANENT CUSTODY TO CLINTON COUNTY CHILDREN'S SERVICES WAS ERROR BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 15} In her second and third assignments of error, F.E. argues the juvenile court's decision to grant permanent custody of her three children to CCCS was not in her children's best interests. In support of this claim, although not specific in her claims, F.E. generally argues the juvenile court's decision was not supported by sufficient evidence and was otherwise against the manifest weight of the evidence. We disagree.

{¶ 16} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). As a result, an appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. In turn, this court will reverse a juvenile court's decision only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 17} In determining whether a lower court's decision is against the manifest weight of the evidence, an appellate court "weighs the evidence and all reasonable inferences,

considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 18} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 19} In this case, the juvenile court found the children had been in the temporary custody of CCCS for more than 12 months of a consecutive 22-month period as of the date CCCS moved for permanent custody, having been in the continuous temporary custody of CCCS since July 15, 2015. Mother does not dispute this finding. Rather, as noted above, Mother merely challenges the juvenile court's finding that granting permanent custody of her three children to CCCS was in their best interests. After a thorough review of the record, we find that such a decision was in the children's best interests.

{¶ 20} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors, including, but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 21} With respect to the children's interactions and interrelationships, the juvenile court noted that F.E. admitted to smoking marijuana and using Vicodin and Percocet while pregnant with Sk. E. The juvenile court further found that at the time Sk. E. was born, F.E. was living in a car with her two older children and the children's father. Following Sk. E.'s birth, the record indicates neither F.E. nor the children's father have been able to maintain stable housing or employment. Rather, the record establishes that F.E. had moved numerous times both in and out of the state seeking work. As noted above, this includes a period of time when F.E. lived in a trailer with both her boyfriend and the children's father,

during which time a physical altercation occurred that resulted in the children's father being charged with domestic violence and assault. The record also indicates F.E. had lived in several motel rooms and in a tent located in her mother's backyard after her children were removed from her care. As the juvenile court stated, "[t]here ha[ve] been numerous moves by the parents, at least nine that the Agency is aware of."

{¶ 22} Continuing, the juvenile court credited F.E. for maintaining contact and attending the scheduled visitation time with her three children. However, while F.E. did consistently visit her children, the record indicates these visits caused the children to suffer from high levels of anxiety and aggression. Moreover, although the children's maternal grandmother testified that she was willing to have custody of her grandchildren immediately, the record indicates she never moved for legal custody of the children nor did she make any changes in her marital status or living arrangements with her husband, a registered sex offender, after her home study was denied for those reasons. The record further indicates that the children's maternal grandmother has not been permitted visitation time with the children and has only seen them once while the children were visiting with F.E.

{¶ 23} On the other hand, as it relates to the children's interactions with their respective foster parents, the juvenile court noted that their interactions were appropriate, that they are bonded to their foster parents, and that they were all doing well in their foster parents' care. Specifically, the juvenile court found "[t]he children are thriving in a stable and secure environment. It is not in the children's best interest to remain in limbo." The guardian ad litem's report also indicates the children have stated that they love their respective foster parents and refer to them as their mothers and fathers.

{¶ 24} Next, in regard to the children's wishes, the juvenile court did not state any of the children's wishes, likely due to their young age, but did note that the guardian ad litem believed it was in the children's best interests to grant permanent custody to CCCS.

Specifically, as the guardian ad litem stated:

> I'll just go on the record with it's my job to look out for best interests of the children. And best interests of the children does not include numerous moves. It does not include periods of unemployment for the parents when they may or may not be fed, the situation we had two years ago. And I just don't see improvement in that.
>
> For that reason, I still believe it's in the best interests of the children for the Agency to be granted permanent custody.

{¶ 25} The guardian ad litem also noted in her report that the history of domestic violence between F.E. and the children's father, as well as F.E.'s lack of employment and stable housing, "are not conducive to raising healthy, happy children." The guardian ad litem additionally noted her concerns that F.E. had not followed up on her mental health counseling and had not been taking her prescribed medication. The record further indicates that a psychological evaluation determined F.E. had some cognitive limitations and a low IQ score, results that led to a referral for developmental disability services. Unfortunately, due to F.E.'s lack of participation in her case plan, those services were not obtained.

{¶ 26} Regarding the children's custodial history, as noted above, the juvenile court found the children had been in the continuous temporary custody of CCCS since July 15, 2015, well over 12 months of a consecutive 22-month period as of the date CCCS moved for permanent custody. F.E. does not dispute this finding.

{¶ 27} With regard to the children's need for a legally secured permanent placement, the juvenile court determined that the children were in need of stability and could not be returned to either F.E. or their father. Specifically, the juvenile court determined that "[i]nstability remains a constant in the lives of the parents. The lack of safe, stable and appropriate housing, the lack of stable employment have been ongoing through this case."

{¶ 28} Finally, with respect to any of the factors contained in R.C. 2151.414(E)(7) to (11), the juvenile court found the children's father had abandoned his three children by not

visiting with the children after moving out of state for work.  F.E. never disputed this finding.

**{¶ 29}** Despite these findings by the juvenile court, all of which are supported by the record, F.E. argues the juvenile court erred by granting permanent custody of her three children to CCCS where the record makes clear that she loves her children and has expressed an interest in reunifying with them, has consistently visited her children after they were removed from her care, and has maintained contact with the CCCS case worker throughout the pendency of this case.  F.E. also claims that her housing issues have now been resolved since she can reside with her mother.  However, while we agree that these factors are somewhat favorable to F.E., none of these factors are dispositive of the juvenile court's ultimate decision regarding the best interests of her children.  This is because, as this court has stated previously, "[n]o one factor is to be given greater weight or heightened significance in the juvenile court's analysis."  *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 41, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

**{¶ 30}** After a thorough review of the record, and when the focus is placed on the best interests of the three children at issue, we find the juvenile court's decision to grant permanent custody of the children to CCCS was supported by sufficient, credible evidence and was otherwise not against the manifest weight of the evidence.  This is true despite the fact that the juvenile court incorrectly stated as part of its decision that Sk. E. had tested positive for drugs at the time of his birth.  Again, as the record reveals, although Sk. E. did not test positive for drugs, F.E. readily admitted to smoking marijuana and using Vicodin and Percocet while she was pregnant with him.  The record also indicates F.E. has been unable to maintain a stable lifestyle, housing, or employment.  The record further indicates the guardian ad litem had concerns that F.E. had not undergone additional mental health counseling or taken her prescribed medication.  A child's best interest cannot be met under

these uncertain circumstances. Therefore, although we have no doubt that F.E. loves her children, because the children are now thriving in a stable and secure environment, we find no error in the juvenile court's decision finding it was in the children's best interests to grant permanent custody to CCCS. Accordingly, finding no error in the juvenile court's decision, F.E.'s second and third assignments of error are without merit and overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.